## ALAMO CASUALTY CO. v. LAIRD.

No. 12174.

Court of Civil Appeals of Texas. Galveston.

March 30, 1950.

Rehearing Denied April 27, 1950.

Randolph & Butler, of Houston, for appellant.

Merrill & Scott, of Houston, for appellee.

CODY, Justice.

This suit was filed March 16, 1949, by appellee, an automobile dealer, on a policy of insurance issued by appellant to appellee, for recovery of the loss occasioned by the theft of one of appellee's automobiles in Houston near midnight of August 8, 1948. After suit was filed, appellee recovered the stolen automobile, and tendered it to appellant, and upon appellant's refusal to accept it, appellee repaired and disposed of it. Then, the court, trying the case without a jury, on October 20, 1949, rendered judgment for appellee against appellant for the principal sum of $1,078.90, together with interest thereon at the legal rate from November 20, 1948.—In response to appellant's request, the court filed conclusions of fact and law. Thereafter, appellant filed a request for additional findings of fact and conclusions of law, which were refused.

So far as here deemed material, the court's findings are in substance:

That at the time of the theft, the policy insured appellee from loss from theft on his automobiles stored on his storage lots at 1925 Milam Street, and at 2001 Louisiana Street, to the limits of $40,000.00. That appellee had about $35,000.00 worth of automobiles on his Milam Street property, and about $25,000.00 worth of automobiles on his Louisiana Street property; that appellee's automobiles stored elsewhere in the city of Houston were not insured by appellant.

That on August 8, 1948, appellee owned at his principal place of business (the Milam Street property) a 1947 Ford Convertible Coupe, of the reasonable market value of $2,095.00. That in accordance with custom, appellee delivered said automobile to a salesman to show to a prospective purchaser. The prospective purchaser was unable to persuade his father to give him the purchase price, and the salesman, failing to make the sale, returned with the car to the Milam Street lot. But the guard chain had been put up for the night, and the salesman could not get the car back on the lot. The salesman consulted with another for about 30 minutes, then drove the car to the intersection of Milam and Dallas, where he lived at a hotel, and there he parked it, and went into the restaurant to get a late snack. When he came back some 30 minutes later, the car had been stolen.

That immediately after the theft, appellee notified appellant, and made "claim for reimbursement under the terms of the policy," and at the same time offered a re-

ward for the recovery of the car. That appellant investigated the loss immediately following the claim and "denied liability therefor".

That when appellant refused to accept the car, after it had been recovered, appellee paid the storage charges incurred by the policy, and in good faith expended $178.40 in repairs necessary to put it in marketable condition, and, not being able to sell same in its condition, appellee in good faith traded it for a Plymouth. That the necessary repairs on the Plymouth amounted to $22.00, and the commission for effecting the trade cost $35.00. That when the Plymouth was later sold, the commission for effecting the sale was $35.00. That the Plymouth was sold for $1200.00, which was its reasonable cash market value. That appellee acted reasonably and in good faith in said transaction, and thereby realized the full value of the Ford.

"That at the time of its theft, said automobile was being handled, used and moved in the ordinary course of plaintiff's business of buying and selling used automobiles, and in accordance with his established custom in the purchase and sale of automobiles, and the demonstration of cars to prospective purchasers."

That all "the expense incurred by plaintiff in the recovery, repair and disposition of the stolen automobile were reasonable and necessary in order to effect a sale of the car and reduce the damage caused by its theft, and the net loss suffered by plaintiff on account of the theft of the automobile was $1078.90. The item of $22.00 paid for the repairs to the Plymouth and the $70.00 paid as commissions to salesmen are not allowed as a part of the necessary expense incurred."

Appellant predicates its appeal on 13 points, covering some two pages of its brief. This unnecessary disregard of Rule 418, TRCP, prevents its points being set out in this opinion. But their boiled down substance is:

That the loss sued for was not a risk insured against by the Policy. That the evidence was insufficient on which to base the finding of the value of appellee's cars, covered by the policy, and the court erred in finding that only the cars stored on the Milam and Louisiana Streets property were covered by the policy. That interest on the recovery should not have been allowed from November 20, 1948. That the evidence did not support the finding that the value of the Ford, when stolen, was $2,095.00. That the court erred in finding that the value of the Ford, when repaired, was the value of the Plymouth, for which it was traded. That the court should have found that the value of the Ford, after it was repaired, was $1295.00.

## Opinion

The policy sued on is a standard automobile policy, "All Cover Form", and insured appellee to the limits of $40,000.00, on automobiles stored at appellee's lots on Milam and Louisiana Streets. Among the exclusions to the policy is Exclusion "e", excluding from coverage: "(e) Theft * * of any automobile stored or displayed in any open lot or unroped space or in any building not secured, enclosed and locked when *unattended, but this provision shall not affect automobiles temporarily outside buildings while being transported or moved in the ordinary course of business*". This exclusion provision was, by Rider No. 12, entitled "Automobile Dealers' Non-Standard Open Lot Storage", eliminated, except perhaps so much thereof as we have italicized. For the purpose of this opinion we assume that the portion of Exclusion (e) which we have italicized applied to appellee's automobiles stored on his Milam Street and Louisiana Street lots.

What the salesman's unaccomplished purpose with respect to the automobile, after he finished his late snack, the court did not determine, and we think properly so, because it was stolen before that point was reached and the rights or obligations of the parties became fixed. The evidence was sufficient to support the court's conclusion that the handling of the automobile by appellee and the salesman was within the contemplation of the policy, and that the automobile was temporarily off of the Milam Street storage lot, and was covered

217

by the policy, "while being transported or moved in the ordinary course of business". National Union Fire Ins. Co. of Pittsburgh, Pa., v. California Cotton Credit Corp., 9 Cir., 76 F.2d 279.

The policy contained this Pro rata Distribution Clause: "The limit of this company's liability upon any automobile insured hereunder shall not exceed that proportion of the total of the limits of liability at named locations stated in Paragraph 3 of this form [$40,000.00] which the value of such automobiles at the time of the loss bears to the value of all automobiles insured hereunder at such time." Since the purpose of a dealer is to buy and sell automobiles, his need for insurance protection is satisfied if the cars are covered while they remain a part of his stock. Here, if appellee had in stock on the named locations automobiles of a total value of $40,000.00 or less, each automobile would be covered so as to protect the dealer from loss. If appellee had on the two named locations automobiles in excess of $40,000.-00 the coverage on each automobile would be proportionately diminished below full coverage.

The evidence here disclosed that appellee's inventory of automobiles owned by him on the first day of the month, preceding the loss, were of the value of $176,267.-50; and that the like inventory for the first day of the next succeeding month was $216,359.50. Appellee's evidence was that he had about $35,000.00 worth of automobiles on the Milam Street location, and about $25,000.00 worth of pre-war automobiles on the Louisiana Street location at the time of the theft. His evidence was to the effect that a large number of his automobiles were on consignment to other dealers, and not on the named locations, and presumably covered by other insurance. The following question and answer is illustrative of the situation of his stock of cars not on the locations named in the policy:

Q. "You have no idea what part of that $176,000.00 worth of cars was on your lot and what was on Laird-Motley's?"

A. "I have no idea what amount of them. You can't put over 20 cars on 1925 Milam, it wouldn't hold them, and I would have anywhere from a $695.00 Ford to maybe a $4,000.00 Cadillac. You wouldn't want all Buicks on one lot and all Model A Fords on another."

The contract of insurance did not require a daily inventory showing the number and value of cars on each of the two covered locations, and there was no other way under appellee's method of doing business to establish the value of the automobiles on the named location except by an estimate based on the average value of cars at each location and the total number of cars that could be kept at each, made by one who knew the facts. As always, the credibility of the witness is addressed to the trier of the facts. Had appellant deemed it requisite that an insured keep daily inventories, it could have so provided in the policy. Whether the expense entailed on the insured would have been too great to make such insurance desirable is not shown.

Under the court's findings, the total value of appellee's cars which were covered had the value of $60,000.00, the value of those at the Milam Street location was $35,000.00, the value of the Ford when stolen was $2,095.00; the loss by reason of theft was found to be $1,078.90, which is a lesser portion of $40,000.00, than $2,095.-00 is of $60,000.00.—We must hold that under the terms of the policy the evidence was sufficient to go to the trier of the facts, and support the conclusion that the policy covered the loss to the extent of $1,078.90.

The policy required the usual proof of loss within 91 days, showing the interest of the insured in the property insured, its cash value at the time of the loss, the amount, place, time, and cause of loss, etc. The policy also provided that payment could not be required unless, as a condition precedent, the insured has fully complied with the terms of the policy, nor until 30 days after proof of loss is filed, etc.

The appellant does not deny liability here on the ground that proof of loss was not

filed within the 91 day period, but contends that the court allowed an excessive recovery by reason of allowing interest from November 20, 1948; and for such reason appellant urges the judgment should be reversed. Appellee affirms, and appellant does not deny that if it be conceded that appellant's contention is sound, that interest should not have been allowed from November 20, 1948, but only from the date appellant filed its answer to the suit, denying liability, the judgment is excessive, at the most, by less than $25.00.

■ Interest begins to run from the date that, by the terms of the policy, the loss should have been paid. So, where the insurer denies liability, and the insured establishes the insurer's liability, interest should begin from the date of the denial of liability. 24 Tex.Jur. 1146, 1147. We believe the evidence was sufficient here to authorize the conclusion that a claim was made on the insurer, which was the equivalent of the proof of loss of the policy within two weeks of the loss, and that the evidence was also sufficient to sustain the court's finding "Defendant investigated the loss immediately following the presentation of the claim and denied liability therefor". The date from which interest was by the court here allowed was 124 days after the theft. Had the company not denied liability within less than two weeks from the loss, as the evidence indicates, but had taken 60 days after proof of loss, allowed by the policy for appointment of appraiser, and thirty days after the determination thereof, that would have at most made 104 days to which the company would have been entitled to delay payment. We find that the judgment was not excessive here by reason of interest being allowed to begin on November 20, 1948.

The sum of $1,078.90 awarded appellee, as indicated above, was thus arrived at:

| | |
|---|---:|
| Value of the Ford when stolen | $2095.00 |
| Less amount received from the sale of the Plymouth for which the Ford was traded | 1200.00 |
| | $ 895.00 |
| Cost of repair to Ford to make it saleable, plus storage charges incurred by policy | 183.90 |
| | $1078.90 |

The policy did not contemplate payment by the insurer of prospective profits on an automobile, but it did provide as indicated above, for payment of the actual cash value. Appellee's testimony was that $2095.00 was the actual cash value of the Ford, when stolen,—that it would have sold for from $2195.00 to $2295.00.

■ When the automobile was recovered, suit had been for some time pending to recover for its loss. Its value when recovered, due to damage while stolen, was $700.00. Appellee tendered the automobile to appellant in its then condition, but appellant declined to exercise its right under the policy to pay the damage to the car, or repair it, etc. We cannot say that appellee was not bound or authorized to take a course of action which would minimize his loss if he did not prevail in the lawsuit, or would minimize appellant's loss, if he did. As stated above, the court found the expenses incurred by appellee in the recovery, repair and disposition of the stolen automobile were reasonable and necessary in order to effect a sale and reduce the damage caused by the theft. Appellant was benefited by appellee's acts which reduced the damages. We sustain the court's action under authority of Bankers and Shippers Ins. Co. of N. Y. v. Ellis Green Motor Co., Tex.Civ.App., 102 S.W. 2d 294.

Judgment affirmed.