LIBERTY MUTUAL INSURANCE COMPANY, Appellant,

v.

GENERAL INSURANCE CORPORATION et al., Appellees.

No. 782.

Court of Civil Appeals of Texas, Tyler.

Dec. 19, 1974.

Rehearing Denied Jan. 9, 1975.

Second Rehearing Denied Jan. 23, 1975.

**792**

Brown, Crowley, Simon & Peebles, M. Hendricks Brown, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, Sloan B. Blair, Fort Worth, for appellees.

McKAY, Justice.

General Insurance Corporation (General) and Continental Casualty Company (Continental) brought suit against Liberty Mutual Insurance Company (Liberty) claiming subrogation as a result of a settlement of a suit General and Continental made in a death case and personal injury case. Trial was before the court without a

jury upon stipulated facts, and judgment was rendered for General in the sum of $40,611, and for Continental for $100,000. Liberty appeals on several points, and General and Continental brought a cross-point because the trial court denied their claim for interest before judgment.

On August 1, 1963, Ben E. Keith Company (Keith) entered into a lease agreement with Texas Drive-Ur-Self, Inc. (Texas Drive) whereby (among other provisions) Keith leased from Texas Drive certain listed (by type) motor vehicles under certain stated conditions.

After taking possession of the leased vehicles from Texas Drive, Keith obtained a general liability insurance policy from General in which Keith was named insured with limits of liability $100,000 each person and $300,000 each occurrence. By endorsement the policy covered "all automobiles leased to Ben E. Keith Company by Texas Drive-Ur-Self, Inc."

Keith also procured an "Umbrella Excess Third Party Liability Policy" from Continental with limit of liability $1,000,000 single limit any one occurrence combined personal injury and/or property damage "in excess of the amount recoverable under the underlying insurance as set out in the attached schedule." The attached "Schedule of Underlying Insurance" listed only the policy of Houston Fire and Casualty which is a part of the Houston-General Insurance Group, and for all purposes here, the same as General.

Liberty Mutual Insurance Company had issued to Texas Drive a comprehensive combination policy (automobile and general liability) with bodily injury limits of $100,000 and $300,000 for both general liability and automobile. Texas Drive was the only insured named in the Liberty policy.

On or about December 22, 1967, a truck owned by Texas Drive and leased to Keith collided with two automobiles in Montague County, Texas. One of the automobiles

was being operated by John R. Stevenson and also occupied by his wife and two minor children, and the other was being operated by James Kaiser and also occupied by four other people. Stevenson was killed and his wife and minor children seriously injured. The driver and occupants of the other car were also injured. The driver of the truck was James W. Mason, an employee of Keith who was in the course and scope of his employment.

As a result of such collision claims were asserted and suit was filed in the District Court of Montague County against Keith and its driver, Mason, seeking damages for the death of Stevenson and the injuries to his wife and children. Claims were also asserted against Keith and its driver by the driver and occupants of the other automobile involved in the collision. General undertook the investigation and defense of such litigation and claims.

After extensive discovery and investigation of the facts and circumstances General and Continental concluded that a compromise settlement of the aforesaid claims should be negotiated if it could be done. Following lengthy negotiations with counsel for the Stevensons a compromise settlement was consummated whereby all the Stevenson claims were settled for a total consideration of $320,000. Pursuant to such settlement an agreed judgment was entered November 1, 1968, which awarded $250,000 of the total settlement as damages for the death of Stevenson, and $70,000 as damages for the personal injuries sustained by his wife and minor children. The judgment further discharged Keith, Mason and Texas Drive, and all persons in privity with them from any liability by reason of the collision with the Stevenson automobile. The claims of the driver Kaiser and the occupants of the other automobile were settled for $3222 in complete discharge of Keith and Mason.

The judgment in the Stevenson litigation was settled by the payment by General of $100,000 of the death claim settlement and the entire $70,000 of the settlement for personal injuries, and by the payment by Continental of $150,000 of the death claim settlement. In investigating and handling of the defense and settlement of all the claims growing out of the collision General incurred expenses and attorneys fees of $8000.

Prior to the settlement and the entry of the judgment, discussions and consultations were had between representatives and counsel of General and Continental with representatives and counsel for Liberty, and demand was made that Liberty contribute one-half of any settlement to the extent of its limits. Counsel for General and Continental claimed that Texas Drive might be negligent with reference to maintenance and condition of brakes on the involved truck. Liberty refused to make any contribution, and Texas Drive was never made a party to the suit by anyone at any time.

█ It seems to be without dispute that the General policy afforded primary coverage. The crucial question then is whether the Liberty policy also afforded primary coverage to Keith and its driver. We are of the opinion that it did.

Liberty contends that General is the exclusive primary insurer (1) because Endorsement A6200 to General's policy, with respect to hired or leased automobiles leased to Keith, provides that General's policy was primary insurance; (2) because the Continental excess policy listed only the General policy as being the underlying and primary coverage; and (3) because the lease contract provided that Keith obtain primary and excess liability coverage on the vehicles leased from Texas Drive.

General and Continental maintain that the policies of both General and Liberty afforded primary coverage, and therefore, General and Liberty were equally obligated to Keith and its driver against third party claims, and that General and Continental having discharged such obligation are sub-

rogated to the rights of Keith and its driver against Liberty.

Endorsement A6200 to General's policy provided:

"With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

(1) The insurance applies as primary insurance.

(2) * * *

Description of automobile:

All automobiles leased to Ben E. Keith Company by Texas Drive-Ur-Self, Inc. * * *."

Liberty's policy provided under "General Provisions," Sec. IV, paragraph 6:

"Other Insurance. *The insurance afforded by this policy is primary insurance*, except when stated to apply in excess of or contingent upon the absence of other insurance. *When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.*" (Emphasis added.)

General's policy has an identical provision.

Liberty's policy also provided under Part II—Comprehensive Automobile Liability Insurance:

"Persons Insured

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) * * *

(c) *any other person while using an owned automobile or a hired automobile with the permission of the named*

*insured*, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * *." (Emphasis added.)

General's policy and Liberty's policy had identical subrogation clauses:

"Subrogation: In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Both the General policy and the Liberty policy provided that the insurance afforded was primary insurance. It is noted also that under "Persons Insured" the Liberty policy includes not only the named insured but also any other person using an owned or hired automobile with permission of the named insured if actual operation was within the scope of such permission. It was stipulated that Keith and its driver were operating the truck with permission of Texas Drive and within the scope of such permission. It is apparent that Keith and its driver were insured under the Liberty policy, and that it was primary insurance the same as the General policy. Keith and its driver would have been covered by either policy.

On the question of Continental's excess policy listing only the General policy as being underlying and primary coverage, it should be pointed out that Continental's policy provided:

"11. *Other Insurance*

If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be in excess of, and shall not contribute with such other insurance. Excess insurance over

the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy."

Continental's policy recognizes that there might be other primary insurance covering the insured in addition to General's policy which is specifically named in Continental's schedule. The above provision provides that Continental's coverage shall be in excess of such other insurance. We disagree with Liberty's contention that General's policy is the only primary coverage because it is listed in Continental's schedule.

We find no reason why another carrier could not bind itself to provide primary coverage to Texas Drive and to Keith and its driver even though the Continental excess policy listed General as the only underlying primary carrier.

Liberty says that General's coverage is the exclusive primary coverage because Keith contracted with Texas Drive to obtain it. The provisions of the lease agreement by which Keith leased from Texas Drive certain automobiles provided in part that Keith's obligation was:

"C. To furnish policies of public liability and property damage insurance with recognized, reputable companies, covering such vehicles, and naming both parties as the insured.

"D. To assume full responsibility for all claims for public liability and property damage in excess of the insurance limits resulting from the operation of any vehicle leased hereunder except in cases where Second Party (Texas Drive) is negligent while said vehicle is being operated by or in the possession of First Party (Keith) or its agents."

Liberty argues that the General policy and the Continental policy were both obtained by Keith to satisfy the above obligation and therefore General was exclusively liable for primary coverage and Continental was liable for all excess above the limits of General's policy. Texas Drive was not listed as a named insured in either the General policy or the Continental policy. It may have been the intention of Texas Drive to require Keith to provide for liability coverage in both primary and excess amounts which would free Texas Drive or its carrier from any responsibility to provide coverage. Keith obtained the required coverage as set out in the lease, but Liberty's policy issued to Texas Drive also covered Keith and its driver by its own terms. If the lease provisions were intended that Keith should assume all responsibility for liability coverage to the exclusion of any other insurance then the Liberty policy should have provided that it did not cover Keith and its driver or it should have had an escape clause. The provisions in the lease would not prohibit an insurance contract being agreed upon by Texas Drive and an insurer which would also provide coverage to Keith and its driver.

Assume, arguendo, that Keith had failed to obtain primary and excess coverage as he agreed to do under the lease with Texas Drive, then under Liberty's policy could Keith recover against Liberty for a judgment against Keith for negligence? We think so. Keith's claim to be covered by Liberty's policy did not depend upon Keith's performance under its contract with Texas Drive, or the breach thereof. Whether there was other insurance or whether Keith agreed to obtain other insurance would not be controlling as to whether Keith was covered by Liberty's policy and could recover against Liberty. If Texas Drive suffered some loss because Keith breached the lease contract then Texas Drive might have an action against Keith for such breach.

General and Continental answer the foregoing contentions of Liberty by saying they are subrogated to the rights of Keith, and that the lease between Texas Drive and Keith is immaterial. The question arises whether Keith, after judgment rendered against it by the claimants in the

Montague County suit, could recover against Liberty to pay such judgment. We must ascertain Keith's right to recover from Liberty without regard to whether there was other coverage unless there was some contractual provision which would bar Keith's recovery from Liberty after a judgment was taken against Keith. We have found no provision in any of the policies which bars Keith from recovery against Liberty. If General and Continental do stand in Keith's shoes then they could recover against Liberty if Keith could do so. Liberty's policy did not contain an escape clause.

The "Other Insurance" provision is the same in the General policy and the Liberty policy. The first paragraph of that provision is quoted above. The remainder is as follows:

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares—If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contributions by Limits—If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Since the policies of General and Liberty have the same $100,000/$300,000 limits, and since the "other insurance" provisions are identical, the proportionate share of liability would be the same whether computed by equal shares or by limits of liability. In our opinion General and Liberty were obligated to share equally the primary coverage up to their limits. Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142 (1943); Security Ins. Co. v. Pioneer Cas. Co., 449 S.W.2d 158 (Tex. Civ.App.—Houston 1st, 1969, writ ref'd, n. r. e.); 7 Am.Jur.2d Automobile Insurance, Sec. 200.

Liberty contends that Continental's excess policy afforded all insurance indemnity coverage to Keith over and above the primary coverage afforded by General. We disagree. The "other insurance" provisions in Liberty's policy provides that when Liberty's insurance is primary and there is other insurance which is applicable to the loss on an excess or contingent basis *"the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."* (Emphasis added.)

An additional reason why Continental's policy is not excess only to General's policy is that Continental's policy provided that "If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be in excess of, and shall not contribute with such other insurance." See 7 Am.Jur.2d, Automobile Ins., Sec. 201.

It is also claimed by Liberty that Continental was not subrogated to any right of recovery that Keith and its driver

had against Liberty. We disagree. Continental's policy provided:

"Inasmuch as this policy is 'Excess Coverage', the Insured's right of recovery against any person or other entity cannot always be exclusively subrogated to the Company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company shall act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of recovery * * *."

It appears that Continental attempted to reserve in its policy the right of subrogation to itself in concert with other interests, but if it can be said the above language is not sufficient to preserve subrogation rights by contractual or conventional subrogation to Continental, then there would be an equitable right of subrogation in favor of Continental. Employers Casualty Co. v. Transport Ins. Co., 444 S.W.2d 606 (Tex.1969); Commercial Standard Ins. Co. v. American Employers Ins. Co., 209 F.2d 60 (Sixth Cir. 1954); United States Guarantee Co. v. Liberty Mutual Insurance Co., 244 Wis. 317, 12 N.W.2d 59 (1943); Employers Mutual Liability Ins. Co. of Wisconsin v. Pacific Indemnity Co., 167 Cal. App.2d 369, 334 P.2d 658 (Dist.Court of App., 1959); Maryland Cas. Co. v. Employers Mutual Liability Ins. Co. of Wisconsin, 112 F.Supp. 272 (U.S.Dist.Ct., Conn., 1953); Restatement of the Law of Restitution, Sec. 162.

In Employers Casualty Co. v. Transport Ins. Co., supra, the court said in a factually similar situation as here:

"Employers Casualty was not, and is not, without a remedy. Its remedy for recovery from Transport of a pro rata part of the payment to the Siegels, as clearly indicated by the many cases listed above from other jurisdictions, lies in a suit asserting its right to payment through contractual or conventional subrogation to the right of the insured.

　*　　*　　*　　*　　*　　*

"And, if the subrogation provision in its policy does not authorize recovery by Employers Casualty from Transport of a pro rata part of the sum paid as attorney's fee in defense of the Siegel suit, equitable subrogation does."

Continental was secondarily liable and was therefore entitled to legal or equitable subrogation against Liberty. The general rule is stated in the recent case of Forney v. Jorrie, 511 S.W.2d 379, 386 (Tex.Civ. App.—San Antonio, 1974, writ ref'd, n. r. e.):

" 'The doctrine of subrogation is given a liberal application, and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter.' Lusk v. Parmer, 114 S.W.2d 677 (Tex.Civ.App.—Amarillo, 1938, writ dism'd)"; also see 53 Tex.Jur.2d, Subrogation, Section 5 (1964).

The "No Action Clause" in Liberty's policy provided:

"Action Against Company—No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

It was stipulated that there was no actual trial of the case and that the settlement was made without any written agreement between the insured, Keith and its driver, the claimants in the Montague County case and Liberty. It was also stipulated that the settlement made by General and Continental and the expenses of investigation and attorney's fee were incurred pursuant to their contractual obligations by virtue of the provisions of their respective insurance policies. Demand was made upon Liberty

to contribute to the settlement, but Liberty refused to do so. However, Liberty did stipulate that the settlement of all claims for death and personal injury were reasonable, and that the cost of investigation and attorney's fee was reasonable. The judgment reflecting the settlement agreement released Keith and its driver, and Texas Drive. General and Continental were not volunteers. General was obligated to defend the action against Keith, and Continental had the privilege of joining the defense of Keith. Each of them was liable under the judgment against Keith.

■ Liberty insists that the no action clause must be complied with before any recovery by General or Continental by reason of subrogation or otherwise. We disagree. It seems now to be the rule that an insurance company may ordinarily insist upon compliance with the no action clause for its own protection, but it may not do so after it is given the opportunity to defend the suit or to agree to a reasonable settlement and refuses to do either claiming erroneously that it has no responsibility. Gulf Insurance Co. v. Parker Products, Inc., 498 S.W.2d 676 (Tex.1973).

General and Continental bring a crosspoint claiming the trial court erred in refusing to allow interest to them on the amounts recovered from the date they paid the judgment in the Montague County case. We find no exception to the judgment by General or Continental, nor did they give notice of appeal therefrom, or in any way inform the court of its dissatisfaction with the judgment rendered. The point is overruled. Security Ins. Co. v. Pioneer Cas. Co., supra; Maloney v. Strain, 410 S.W.2d 650 (Tex.Civ.App.—Eastland, 1966, no writ); Dorbant v. Bailey, 453 S.W.2d 205 (Tex.Civ.App.—Tyler, 1970, writ ref'd, n. r. e.).

■ The trial court's judgment in favor of General against Liberty in the sum of $40,611 constituted one-half of the personal injury liability and one-half of the attor-

ney's fees and expenses incurred in the settlement judgment. We believe the trial court was correct in this regard.

Other points of error which Liberty has brought which we have not discussed have been duly examined and considered, and they, along with those discussed, are overruled.

Judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

■ By their motion for rehearing General and Continental have called our attention to a Supplemental Transcript which was, with the court's permission, filed after submission, and which contains their exception to the judgment because it did not provide for pre-judgment interest. There is also a notice of appeal by appellees on the question only of pre-judgment interest. We sustain the crosspoint of General and Continental.

■ It has been held in Texas in many cases that interest is allowed as compensation for the detention of money where the recovery or damages are fixed by the conditions existing at the time the injury is inflicted. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897); Davidson v. Clearman, 391 S.W.2d 48 (Tex.1965); Womack Machine Supply Co. v. Fannin Bank, 504 S.W.2d 827 (Tex.1974). See Art. 5069–1.01 et seq., Vernon's Ann.Tex.Civ.St. To be more specific as to the instant case, where an insurer denies liability, and the insured establishes the insurer's liability, interest will begin from the date of the denial of liability. Fort Worth Lloyds v. Hale, 405 S.W.2d 639 (Tex.Civ.App.—Amarillo, 1966, ref'd, n. r. e.); Standard Nat. Ins. Co. v. Bayless, 338 S.W.2d 313 (Tex.Civ.App.—Beaumont, 1960, writ ref'd, n. r. e.); Alamo Casualty Co. v. Laird, 229 S.W.2d 214 (Tex.Civ.App.—Galveston, 1950, writ ref'd, n. r. e.).

We hold that interest at the rate of six per cent would begin to run from Novem-

ber 30, 1968, the date on which General and Continental paid the judgment in Montague County. Such judgment and payment by General and Continental were the result of the compromise settlement agreement made with the claimants in the Montague County suit, and Liberty agreed such settlement was reasonable but refused to contribute to it and thus denied liability. Liberty's liability was liquidated and fixed as of that date.

■ Liberty points out that the pleadings and prayer of General and Continental did not ask for interest from November 30, 1968, or from any date, and that under such circumstances they would be entitled to interest only from the date of judgment. The petition upon which General and Continental went to trial contained the following prayer;

"WHEREFORE, plaintiffs pray that upon final hearing hereof plaintiffs do have and recover of and from defendant the sum of $167,607, together with their costs in this behalf expended and that plaintiffs have such other and further relief to which they may appear entitled."

The judgment of the trial court rendered judgment for $40,611 for General and $100,000 for Continental. According to the record the judgment was correct for the principal amounts due. However, the prayer, as shown above, was for a total of $167,607, approximately $27,000 in excess of the principal amount. The pleadings and prayer do not indicate what the excess over the principal amount represents.

A general prayer for relief will ordinarily be sufficient to permit recovery for pre-judgment interest. Combined Insurance Co. of America v. Kennedy, 495 S.W.2d 306 (Tex.Civ.App.—Eastland, 1973, writ ref'd, n. r. e.); Tennessee Life Ins. Co. v. Nelson, 459 S.W.2d 450 (Tex.Civ.App.—Houston, 14th, 1970, no writ); Dun-

nam v. Dillingham, 345 S.W.2d 314 (Tex. Civ.App.—Austin, 1961, no writ).

We have examined Liberty's motion for rehearing and have reconsidered our opinion on the points presented. We overrule Liberty's motion for rehearing.

The judgment of the trial court is reformed to include interest at 6% from November 30, 1968, to the date of the judgment of the trial court.

Judgment of the trial court is reformed, and as reformed is affirmed.