cv4-355 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00355-CV







CNA Lloyds of Texas, Appellant



v.



St. Paul Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-03464, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 

 Appellant CNA Lloyds of Texas ("CNA") appeals from a summary judgment
granted in favor of appellee St. Paul Insurance Company ("St. Paul"). St. Paul demanded
reimbursement from CNA for money St. Paul alleged it overpaid in a settlement the two insurance
companies funded. We will affirm the trial court's judgment. 



FACTUAL AND PROCEDURAL BACKGROUND


 In the underlying lawsuit, Faye Dianne Harris brought claims of dental malpractice
and gross negligence against her dentist, Dr. Oliver Strom. The alleged acts of malpractice began
on August 12, 1985, and continued through June 24, 1987. Strom held liability insurance policies
providing coverage for the years in which his alleged acts of malpractice occurred. Strom's policy
with St. Paul provided coverage for claims based on events occurring from October 28, 1984, to
October 28, 1985. The liability limit of the St. Paul policy was $100,000 per claim. Strom's
policy with CNA provided coverage, as renewed, for claims based on events occurring from
October 28, 1985, to October 28, 1987. The liability limit of the CNA policy was $1,000,000
per claim. It is undisputed that the St. Paul and CNA policies provided consecutive coverage for
distinct policy periods; at no time during the three relevant coverage years did the two policies
overlap. However, it is also undisputed that continuous acts of malpractice resulted in one injury
which triggered coverage under both insurance policies. (1) 

 Before trial, the insurers reached a settlement with Harris for $262,500. CNA
contributed $162,500 toward the settlement, and St. Paul contributed its $100,000 policy limit. 
At the time of settlement, St. Paul expressed its intent to seek recovery against CNA for
reimbursement of money St. Paul believed it overpaid in the settlement. St. Paul based its
reimbursement claim on the "other insurance" clause in its policy. That clause provides that if
a claim covered under the St. Paul policy is also covered under another insurance policy, St. Paul
will contribute only its pro rata share of the total amount of insurance covering the claim up to
its coverage limits.

 On March 25, 1993, St. Paul filed this lawsuit for subrogation and reimbursement
against CNA, seeking reimbursement of $76,136.36, the portion of the settlement it paid which
it alleged exceeded its pro rata share. (2) After a series of motions, the trial court granted summary
judgment in favor of St. Paul. (3) CNA now appeals from the trial court's final judgment, asserting
three points of error.



DISCUSSION


 The standards for reviewing a summary judgment are well established. A movant
for summary judgment must establish that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548 (Tex. 1985). All evidence favorable to the nonmovant will be taken as true; every
reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its
favor. Id. at 548-49. When, as in the instant case, the trial court's order does not specify the
basis or theory upon which the motion is granted, the summary judgment must be affirmed on any
meritorious theory of recovery. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989). 
 

 In its first and second points of error, CNA contends that the trial court erred in
granting summary judgment for St. Paul because St. Paul's "other insurance" clause does not
apply when other insurance like CNA's provides consecutive, not concurrent, coverage; instead,
"other insurance" clauses apply only when more than one insurance policy provides concurrent
coverage. In support of its position, CNA cites St. Paul Fire & Marine Insurance Co. v. Vigilant
Insurance Co., 919 F.2d 235, 241 (4th Cir. 1990), for the proposition that "when policies provide
consecutive coverage rather than concurrent coverage, `other insurance' clauses are simply
inapplicable." Id. 

 We agree that the "other insurance" clauses contained in the St. Paul and CNA
policies apply to claims covered by more than one insurance policy. (4) When the language of an
insurance policy is unambiguous, we must give the words used their ordinary meaning. Puckett
v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984). The St. Paul "other insurance" clause
applies when a claim covered by the St. Paul policy is also "covered under other insurance." 
Likewise, the CNA "other insurance" clause applies when both the CNA policy "and other
insurance apply to the loss." The parties do not dispute that Harris's claim of a continuing
occurrence of malpractice triggered coverage under both policies or that the claim "would be a
covered claim under each insurance company's policy." (5) Regardless of the usual coverage
provided by the two successive insurance policies, the parties' stipulation indicates that the
insurance coverage of Harris's claim is concurrent, contrary to CNA's assertions. We conclude
that the plain language of each policy's "other insurance" clause renders those clauses applicable
to this cause for apportionment purposes. 

 Nevertheless, CNA further contends that St. Paul's "other insurance" clause
requires "stacking," in other words, an adding up of limits provided under the applicable
insurance policies to provide a grand total limit of coverage. Such "stacking," CNA argues,
contravenes the supreme court's opinion in American Physicians Insurance Exchange v. Garcia,
876 S.W.2d 842 (Tex. 1994), and therefore cannot apply to this cause for determining
apportionment. In American Physicians, the Texas Supreme Court ruled that for indemnity
purposes, coverage under consecutive insurance policies "could not be `stacked' to multiply
coverage for a single claim involving indivisible injury." Id. at 853. The court explained, "If a
single occurrence triggers more than one policy, covering different policy periods, then different
[policy] limits may have applied at different times." Id. at 855. Consequently, a triggering of
multiple policies, while providing multiple funding sources, does not lead to a conclusion that the
total coverage available exceeds the policy limit in every policy purchased by the insured. Id. 
Instead, the total coverage available must be the highest liability limit available under any of the
multiple policies covering the claim. Id.

 American Physicians does not squarely address the issue presented to us today. 
Cases involving multiple consecutive insurers and one claim based on a continuous occurrence can
involve three separate determinations: 1) trigger of coverage, (2) extent of coverage, and (3)
allocation of liability among multiple insurers. See Keene Corp. v. Insurance Co. of N. Am., 667
F.2d 1034, 1042 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007 (1982). In this cause, the
question of coverage is controlled by stipulation; both parties stipulated that their respective
policies each provide coverage for the claim. American Physicians addresses the second inquiry,
the issue of an insured's entitlement to indemnification from its respective insurers. Again, this
issue is not before us. Instead, we are confronted with the third identified inquiry, the allocation
of liability among multiple insurers. 

 Keene, a case involving consecutive insurance coverage for an asbestos-disease
claim, offers some instruction in this regard. (6) The Keene court first addressed the trigger of
coverage and extent of coverage issues. The court found that the single claim triggered the
consecutive insurance policies and held, for the same reasoning set forth in American Physicians,
that an insured may collect the policy limits of only one of several consecutive insurance policies
covering one claim. Keene, 667 F.2d at 1049. "Stacking" was not permitted. Id. 

 The court then addressed the allocation of liability issue, holding that once coverage
under an insurance policy is triggered, an insurer is liable up to its policy limits, subject to "other
insurance" clauses. Id. at 1047, 1048. The court explained, "There is nothing in the policies that
provides for a reduction of the insurer's liability if an injury occurs only in part during a policy
period." Id. at 1048. Thus, the insurer was obligated to pay the full amount of damages due
"subject only to the provisions in the policies that govern the allocation of liability when more
than one policy covers an injury." Id. at 1050. The Keene court assured that its holding did not
mean "that a single insurer will be saddled with full liability for any injury. When more than one
policy applies to a loss, the `other insurance' provisions of each policy provide a scheme by
which the insurers' liability is to be apportioned." Id. We believe American Physicians echoed
Keene's assurance by stating: "Once the applicable limit [of coverage] is identified, all insurers
whose policies are triggered must allocate funding of the indemnity limit among themselves
according to their subrogation rights." American Physicians, 876 S.W.2d at 855. 

 Similarly, the insurance policies in the instant case, like those analyzed in Keene,
do not provide for a reduction of the insurer's liability limits if an injury only partially occurs
during a policy period. Instead, both policies contract to pay the sums the insured becomes
legally obligated to pay, not merely a pro rata portion of that amount. The St. Paul policy
provides: "We'll pay amounts you're legally required to pay for damages resulting from: 
Professional services that you provided or should have provided." The CNA policy provides: 
"[CNA] will pay on behalf of the insured all sums which the insured shall become legally
obligated to pay as damages because of : . . . injury arising out of the rendering of or failure to
render, during the policy period, professional services by the individual insured . . . ." 
Consequently, once triggered, both the St. Paul and CNA policies provide full coverage, up to
policy limits, for Harris's entire claim. 

 St. Paul's "other insurance" clause provides that when other insurance covers a
claim also covered by St. Paul insurance, St. Paul will pay its pro rata portion of the total amount
of insurance covering the claim. The total amount of insurance covering Harris's claim includes
the full liability limits of both the St. Paul and CNA insurance policies. While an insured's
indemnity amount may not be calculated through stacking, the allocation of each insurer's liability
for the settlement of Harris's claim must be determined by adding the liability limits of each
insurer. If the trial court relied on St. Paul's "other insurance" clause in its grant of summary
judgment, it did not err by doing so. We overrule CNA's first and second points of error. 

 CNA contends in parts B and C of its third point of error that even if St. Paul's
policy establishes a right to reimbursement, St. Paul cannot assert that right because it voluntarily
contributed its policy limits to the settlement, and, consequently, the trial court erred in granting
summary judgment. We disagree. St. Paul did not voluntarily contribute to the settlement
amount; pursuant to its insurance policy, St. Paul had a contractual duty to defend any claim
against Strom. St. Paul protested from the outset that its contribution toward settlement should
not exceed nine percent and reserved its rights to proceed against CNA. Because it was not a
volunteer, St. Paul was entitled to equitable subrogation against CNA. See Employers Casualty
Co. v. Transport Ins. Co., 444 S.W.2d 606, 609-10 (Tex. 1969) (rejecting remedy of contribution
between carriers with a mutual insured but recognizing remedy of equitable subrogation even if
contractual subrogation was not authorized by applicable insurance policy); Liberty Mut. Ins. Co.
v. General Ins. Corp., 517 S.W.2d 791, 797-98 (Tex. Civ. App.--Tyler 1974, writ ref'd n.r.e.);
see also American Physicians, 876 S.W.2d at 855 ("Once the applicable limit [of coverage] is
identified, all insurers whose policies are triggered must allocate funding of the indemnity limit
among themselves according to their subrogation rights."). We overrule parts B and C of CNA's
third point of error. 

 Having overruled CNA's first and second points of error and parts B and C of its
third point of error, and in the absence of any fact issues, we conclude the trial court could have
correctly determined that St. Paul was entitled to judgment as a matter of law. Our conclusion
precludes the need to reach part A of CNA's third point of error. Consequently, we affirm the
trial court's summary judgment. See Ricane Enters., 772 S.W.2d at 79. 



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: June 21, 1995

Publish

 
1.   The parties have stipulated to the following: "The claim made by Ms. Harris in the
underlying case, which was settled w/the consent of both ins. companies, would be a covered
claim under each insurance company's policy."
2.   Using the mathematical formula described in its "other insurance" clause, St. Paul claims
entitlement to $76,136.36. This dollar amount is derived by dividing the liability limit of each
individual policy by the sum of the liability limits of the two insurers (i.e., $1,000,000 CNA
policy limit + $100,000 St. Paul policy limit = $1,100,000 total. $100,000 St. Paul policy
limit divided by $1,100,000 total = 1/11 or 9%). Nine percent of the $262,500 settlement
amount is $23,863.64, the dollar amount St. Paul maintains it was responsible for paying in
the settlement. Thus, St. Paul claims entitlement to $76,136.36 from CNA--the difference
between St. Paul's $100,000 settlement contribution and its alleged proper payment of
$23,863.64.
3.   Originally, both parties filed motions for summary judgment. On January 5, 1994, the
trial court granted St. Paul's motion for partial summary judgment and denied CNA's motion. 
Apparently, the trial court granted St. Paul a partial summary judgment rather than a final
judgment because it believed St. Paul had other pending causes of action against CNA. St.
Paul subsequently filed another motion for partial summary judgment to recover attorney's
fees incurred in pursuing its reimbursement claim. On March 14, 1994, the trial court
awarded attorney's fees to St. Paul and reformed the previous partial summary judgment into a
final order, rendering St. Paul's second motion for partial summary judgment moot.
4.   St. Paul's "other insurance" clause provides:


A professional liability claim that's covered under this agreement may also be
covered under other insurance. If it is, we'll pay that portion of the total amount
of insurance covering the claim. But we won't pay more than our limits of
coverage. For example: 


Your limit of coverage under this agreement is $300,000. You have another
insurance policy with a limit of $200,000. Both policies cover the same claim. 
We won't pay more than 60% ($300,000/$500,000) of the claim, up to the limits
of coverage.


CNA's "other insurance" clause provides:


 When both this insurance and other insurance apply to the loss on the same
basis, whether primary, excess or contingent, the company [CNA] shall not be
liable under this policy for a greater proportion of the loss than that stated in the
applicable contribution provision below:


. . . .


(b) Contribution by Limits. If any of such other insurance does not provide for
contribution by equal shares, the company [CNA] shall not be liable for a greater
proportion of such loss than the applicable limit of liability under this policy for
such loss bears to the total applicable limit of liability of all valid and collectible
insurance against such loss.
5.   This case does not require us to determine whether Harris's claim triggered coverage
under one or both of the insurance policies. The coverage trigger issue for continuing
occurrences has troubled courts across the country in recent years, and Texas has limited
precedent on that issue. See American Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 853
n.20 (Tex. 1994). One court suggests that the theory used to trigger insurance policy
coverage for continuing occurrences determines whether insurers with consecutive policies are
liable for consecutive or concurrent coverage. See Northern States Power Co. v. Fidelity &
Casualty Co., 523 N.W.2d 657, 662 (Minn. 1994).
6.   American Physicians relies in part on the Keene court's reasoning. American
Physicians, 876 S.W.2d at 854.