**Jay CHESNUT and Elmer Halstead, d/b/a B. C. Oil and Gas Company, Appellants,**

v.

**COASTAL OIL AND LAND CORPORATION, Appellee.**

**No. 1141.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 21, 1976.

Rehearing Denied Nov. 18, 1976.

Michael W. Williams, Corpus Christi, for appellants.

Ralph J. Graham, Corpus Christi, for appellee.

OPINION

NYE, Chief Justice.

This is an appeal from the judgment of the trial court finding that there was no violation of the Texas Securities Act in the assignment of an oil, gas and mineral lease. From this adverse judgment the appellants have perfected their appeal to this Court.

In 1974, Billy Williams, a local geologist proposed to appellee Coastal Oil and Land Corporation that they acquire a mineral lease on some 2,000 acres of land in Duval County for the purpose of exploring for natural gas. Mr. Williams' commission for his work was to be $5.00 per acre and $\frac{1}{32}$ overriding royalty in any resulting production. Appellee decided that it did not want to lease this large a tract but did agree to lease some 626 of the 2,000 acres from Jovita Montalvo (landowner and lessor) and to pay Williams his agreed commission. There was, however, an understanding that Williams would be entitled to his commission on any additional acreage acquired by appellee.

About this same time, the appellants also became interested in this Duval County oil-gas prospect. After a test well was drilled, logged and tested and the test results from the samplings on the 626 acre lease were found to be positive, the appellants and appellee entered into an agreement whereby the appellee was to acquire an additional 550 acre lease from Montalvo for the joint account of the appellants and appellee. The lease was acquired by appellee who promptly assigned a ¾ interest in the new 550 acre lease to appellants for which they paid $8,765.63. Sometime thereafter, the test well on the 626 acre lease was plugged and abandoned.

In May of 1975, appellants first brought suit to have the assignment of ¾ interest in the 550 acre tract set aside. As grounds for setting aside the conveyance, the appellants plead fraud and misrepresentation. In June of 1975, the appellants filed a separate suit against the same appellee seeking to have the assignment set aside because of the failure of appellee to register as a security dealer under the Texas Securities

Act. The appellants sought not only the recovery of the monies originally paid for the assignment, but additional exemplary damages as provided in the Securities Act. Later the appellants consolidated their two causes of action. Thereafter they filed their first amended petition in which they only sought recovery under the Securities Act evidently abandoning their cause of action for fraud and misrepresentation. Before the suits were consolidated, appellants had requested the following admissions from the appellee:

1) that appellee company had executed the assignment to appellants in consideration of $10.00 and other good and valuable consideration;

2) that appellee was not a registered dealer in securities at the time of the assignment;

3) that the agent of appellee who executed the assignment to appellants was not a registered dealer in securities at the time of the assignment.

These admissions were admitted.

The cause went to trial on March 29, 1976, before the court and at the conclusion of the hearing and presentation of evidence, the trial court ruled for the appellee that the appellants take nothing. Pursuant to a request by the appellants, the trial court made the following findings of fact:

1) that prior to December 5, 1974, appellants and appellee agreed that an oil and gas lease would be procured for their joint account on the 550 acres of land owned by Jovita Montalvo;

2) that prior to December 5, 1974, appellants and appellee agreed that appellee would procure for the joint account of the appellants and appellee the lease on the 550 acres of Montalvo's land; and

3) that appellee on December 5, 1974, procured for the joint account of appellants and appellee an oil and gas lease on the 550 acres of land owned by Jovita Montalvo.

Through three points of error the appellants have presented essentially one question to this Court: whether or not there was a sale under the Texas Securities Act between the litigants. The appellants assert that since the appellee judicially admitted the conveyance of the assignment for a valuable consideration, there was a "sale" as that term is defined by the securities Act. The appellants' position is that since there was a sale and the appellee admitted it was not registered under the Securities Act to sell securities, there can be no question of its entitlement to its penalties as prescribed by the Act. Additionally, the appellants point out that a break-down of the amount charged the appellants indicates some $687.50 was charged to them as a brokerage fee. This, they say, is a further indication of a sale of a security.

The appellee does not deny the existence of the assignment for consideration nor the fact that its corporation was not registered to sell securities. The appellee's position is that this lease was procured for the appellants by the appellee based on a mutual agreement and understanding between the parties. The thrust of this argument is that the appellee was acting only as an agent for the appellants in procuring the lease and at no time did it sell the ¾ interest in the lease to the appellants. The land was acquired initially for both parties and that the subsequent assignment of the ¾ interest was simply a written clarification of the previous agreement between the parties for the acquisition of the lease.

One of the appellants, Jay Chesnut, testified that he was in a joint partnership with Elmer Halstead and that they were doing business as B. C. Oil and Gas Company. He testified that their company entered into an agreement with appellee's company to lease some land and drill a well. He testified that Dick Barrett was his company's representative in Duval County and was authorized to set up oil and gas deals. He directed Barrett to acquire the 550 acre lease if the test looked good on the original 626 acre tract. Evidence showed that Barrett authorized the purchase of the interest in the 550 acre tract and that Chesnut had accepted the assignment and recorded it. Barrett testified that the acreage was acquired for the joint account of B. C. Oil and

Gas Company consisting of Chesnut, Halstead and himself, and Coastal Oil and Land Corporation. He admitted that the appellant company had paid its pro-rata share in acquiring the 550 acre lease in accordance with the agreement between the parties. They agreed to pay and did pay ¾ of the costs of the lease.

It is clear to us that the 550 acre lease in question was procured for appellants by Coastal for the joint account of both parties. Three of the four witnesses who testified all stated that there was a joint venture between the parties for the acquisition of the 626 acre lease through the acquisition of the 550 acre lease. Although the principal members of appellants' company were not directly involved in this agreement, they were clearly bound to the agreement by the acts of their agent Dick Barrett. This was admitted. We hold that there was ample evidence to support the trial court's findings that there was a mutual agreement between the parties to procure the 550 acre lease and that the lease was procured by Coastal for the joint account of B. C. and Coastal.

■ The question again is: did appellee, under these facts, violate the Texas Securities Act? Art. 581–1, et seq., Tex.Rev.Civ. Stat.Ann. (1964). Pertinent selected sections of the Act state in part:

a) that "[t]he term 'security' or 'securities' shall include . . . any instrument representing any interest in or under an oil, gas or mining lease . . ." Art. 581–4(A);

b) that "[t]he term 'dealer' shall include every person or company . . . who engages in this state . . . in selling . . . any security or securities within this state . . ." Art. 581–4(C);

c) that "[t]he terms 'sale' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value . . ." Art. 581–4(E);

d) that, with certain exceptions, no person, firm, corporation or dealer may sell any security within the state without first being

registered under Art. 581–7 of the act. Art. 481–12;

e) Art. 581–29 makes the sale of a security without being registered a penal offense and Art. 581–33 provides for civil penalties for violation of the act.

The pivotal question is whether or not the assignment of the oil and gas lease was a "sale" as that word is defined in the Act.

A somewhat similar situation was before the Beaumont Court of Civil Appeals in *Allen v. Sorenson,* 388 S.W.2d 757 (Tex.Civ. App.—Beaumont 1965, writ ref'd n. r. e.). In the *Allen* case, the suit was brought to recover commissions due under a contract. The contract in question authorized the appellant to act as an agent for the appellees in purchasing oil leases. The question before the court was whether or not the appellant had to be licensed under the Real Estate Act to recover commissions for procuring oil, gas, and mineral leases. In determining this question, the court pointed out that the procuring of oil and gas lease was not a sale of securities. What the court said was that before the Securities Act comes into play, there must be a "sale" of a security.

The Supreme Court has twice held that one who is simply buying or procuring an oil and gas lease for another is not required to be registered under the Securities Act. See *Herren v. Hollingsworth,* 140 Tex. 263, 167 S.W.2d 735 (1943); *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478 (1942). See also *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956); *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1967). In an earlier case of *Culver v. Cockburn,* 127 S.W.2d 328 (Tex. Civ.App.—Galveston 1939, writ dism'd jdgmt. cor.), one of the parties received a 10% commission for the procuring of the lease. The court did not believe that this was indicative of a sale under the Securities Act.

There appears to be some argument for the fact that the 1941 Amendments to Art. 600a § 36 (now Art. 581–34), requires all provisions of the Act to apply to both purchasers and sellers. Art. 581–34 states that no person or company may maintain an

action for collection of commission for services in selling or purchasing securities without first proving they are licensed under the Act. This amendment, however, has been narrowly construed to apply only to a suit to recover commissions under 600a § 36 or Art. 581–34. See *Maddox v. Flato,* 423 S.W.2d 371 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). In *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947), the Supreme Court stated that the 1941 amendments to the Act did not change the general purposes of the Act. See *Dunnam v. Dillingham,* 345 S.W.2d 314 (Tex.Civ.App.—Austin 1961, no writ). We hold that the provisions of Art. 581–34 have no application to the fact situation here in controversy.

When Coastal procured the 550 acre lease, appellants already had equitable title to ¾ of the 550 acres based on the prior agreement between the parties. Coastal simply paid the entire price to Jovita Montalvo to firm up the deal. Coastal did not turn around and then sell appellants' ¾ of the lease. What they did was assign to appellants the legal title to ¾ of the lease upon their payment of ¾ of the purchase price of the entire lease. There was no sale involved, only a repayment based on the agreement between the parties. The wording in the assignment ". . . for $10 and other valuable consideration" was simply the language necessary to show a transfer of an interest in real property for a valuable consideration. Appellants' points of error 1 and 2 are overruled.

In his third point of error, the appellants complain that the trial court erred in impliedly concluding that there was some type of exemption of appellee's action from the Securities Act. Evidently, the appellant completely misunderstood the trial court's judgment. Appellee did not plead any exemption and the trial court did not find any exemptions to the Act. What the trial court found was that there was "No Sale" *of* a security under the Act. Therefore, the provisions of the Act never came into play under the facts of this case. Appellants' third point of error is overruled.

The judgment of the trial court is AFFIRMED.