**Emory A. DUNNAM, Appellant,**

**v.**

**S. R. DILLINGHAM et al., Appellees.**

**No. 10833.**

Court of Civil Appeals of Texas.

Austin.

March 29, 1961.

Cox, Brown & Daniel, John B. Daniel, Jr., Temple, for appellant.

Gay & Meyers, Austin, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment of the court in favor of appellees for $9,704.-27, together with interest on such sum, from November 8, 1954 in the sum of $3,-202.38, and interest thereon from date of judgment.

Appellees sued appellant on a written contract relating to the transfer and assignment of ten certain oil and gas leases. Appellees obligated themselves to procure new leases from the owners to appellant. The contract is as follows:

"State of Texas }
"County of Burnet }

"Whereas, S. R. Dillingham of Burnet County and H. A. Rader of Caldwell County, called collectively First Party, are owners of options for oil and gas leases upon approximately 12,000 acres of land in the South and East portion of Burnet County, Texas; and

"Whereas, Emory A. Dunnam, of Bell County, Texas, Second Party, desires to purchase the options owned by First Party insofar as they cover oil and gas leases upon approximately 4,-700 acres out of said approximately 12,000 acre block;

"Now, Therefore, Know All Men By These Presents: That First Party has sold, transferred and assigned, and by these presents does sell, transfer and assign unto Second Party their options for oil and gas leases upon the approximately 4,700 acre block described in the commitment from Gulf Oil Corporation dated May 14, 1954, a photostatic copy of which is hereto attached and marked 'Exhibit A', to which reference is made for all purposes as fully as if said leases described in such 'Exhibit A' were herein set forth in full, upon the following terms and conditions, to-wit:

"(a) First party will immediately procure new oil and gas leases on forms heretofore submitted to them by Second Party, said leases to be taken in the name of Emory A. Dunnam as lessee, primary term of ten years, delay rental of $1.00 per acre per year, and all leases dated May 17, 1954. In procuring said leases First Party agrees to and will deliver with said leases, abstracts of title where available and if not available, will so state in transferral of leases to Second Party and indicate when abstract will be available.

"(b) First Party agrees to furnish abstracts of title certified down to date on all such tracts of land included in the 4,700 acre block, provided that any cost of such abstracts in excess of $550.00 for the group shall be borne by Second Party, and Second Party hereby agrees to pay for such excess costs.

"(c) First Party agrees to furnish all curative matter required by the attorneys for Gulf Oil Corporation, and First Party shall furnish his own time, effort, automobiles, and other expense in procuring the curative matter without charging any fee or advance therefor.

"Upon the receipt of the duly executed leases as set out hereinbefore, together with an abstract, or commitment for procuring abstract, Second Party here binds himself to pay immediately the sum of $1.00 per acre for such leases as are taken in his name and forwarded to him to the Temple National Bank, Temple, Texas. First party is hereby authorized to procure leases as hereinbefore indicated and draw a draft on Second Party, which draft will have the same effect as a check signed by the Second Party, provided the leases are taken properly as hereinbefore set out. Second Party further agrees that when and if the Gulf Oil Corporation accepts title and pays off to him for his assignment of such oil and gas leases, that he will thereupon deposit in the Temple National Bank of Temple, Texas, the sum of $2.00 per acre to the credit of First Party, in payment for the options covered by this contract, with due allowance or reserve for rejected titles, if any, and cost of abstracts not to exceed $550.00. However, it is agreed by and between First and Second Party that if any failure in title occurs and the Gulf Oil Corporation rejects any title, then First Party is to reimburse to the Second Party the $1.00 per acre expended by him on such disapproved title or titles.

"The parties hereto agree to cooperate in every way to the end that the landowners may receive their money promptly on approved leases before the expiration date of the option, and to the end that the purchase by the Gulf Oil Corporation of approved titles may be completed at the earliest possible date.

"Witness the hands of the parties at Briggs, Burnet County, Texas, this the 17th day of May, 1954, in triplicate originals, each of which shall be taken and considered as an original.

"(s) S. R. Dillingham

    H. A. Rader        First Party

"(s) Emory A. Dunnam Second Party

"(Acknowledged before H. Clinkscales, Notary Public in and for Burnet County, Texas, on the 17th day of May, 1954, with seal.)"

The appeal is founded on four points and are:

"First Point: The trial court erred in overruling appellant's special exceptions to the effect that appellees were required to affirmatively plead and prove that they each or the partnership composed of Dillingham and Rader had issued to both of them or to such partnership a security license in effect at the time of the execution of the contract.

"Second Point: The trial court erred in granting judgment in favor of appellees where the facts proved showed conclusively that neither both of appellees nor the partnership composed of Dillingham and Rader had in effect a security license at the time of the execution of the contract.

"Third Point: The trial court erred in granting judgment in favor of appellees where appellees neither plead-

ed nor proved any basis of exemption from the provisions of the Security Act.

"Fourth Point: The trial court erred in granting interest on the judgment award from date of November 8, 1954, to date of judgment where the contract sued upon did not provide for interest and where appellees' pleadings did not ask for interest prior to judgment."

Appellant specially excepted to paragraphs 2, e and 4 of appellees' original petition because it was not alleged that either of the plaintiffs in their individual capacities, or the two plaintiffs together as a partnership were at the time of the execution of the said contract, licensed security dealers under the provisions of Article 600a.

Appellees held oil and gas leases on several thousand acres of land in Bell and Burnet Counties, dated prior to February 1, 1954.

On May 14, 1954, appellant had been authorized by Gulf Oil Corporation to acquire oil and gas leases on approximately 4,700 acres in the area.

The contract herein set out was made and appellees sold and caused to be delivered to appellant leases aggregating 4,700 acres for the prices named in the contract, the new leases being taken in the name of appellant. The Gulf paid appellant in full about November 1, 1954, but appellant did not deposit to the credit of appellees in a Temple Bank the sum of $2 per acre as agreed in the contract, contending that to pay appellees would violate the Securities Act.

Appellee Rader had a security license, Dillingham did not have such license and has never had one.

The Trial Court held that the transaction between the parties was specifically exempted by Section 3(c) and 3(i) of Article 600–a, the provisions of which are:

"Sec. 3. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions: * * *

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act. * * *

"(i) The sale to any bank, trust company, loan and brokerage corporation, building and loan association, insurance company, surety or guaranty company, savings institution, or to any registered dealer provided such dealer is actually engaged in buying and selling securities."

Section 33b of Art. 600a, provides:

"Sec. 33b. No person or company shall bring or maintain any action in the courts of this state for the collection of a commission or compensation for services rendered in the sale or purchase of securities, as that term is herein defined, without alleging and proving that such person or company was duly licensed under the provisions hereof and the securities so sold or purchased were duly registered under

the provisions hereof at the time the alleged cause of action arose, provided, however, that this section or provision of this Act shall not apply to the exempt transactions set forth in Section 3 of this Act or to the sale and purchase of securities listed in Section 23 of this Act, when sold by a registered dealer."

Appellant testified that he was a duly licensed securities dealer, and the Court so found.

Subsection (i) of Sec. 3 supra reads in part: "The sale to * * *, or to any registered dealer provided such dealer is actually engaged in buying and selling securities."

The Trial Court found that appellees sold their oil and gas leases to appellant.

The Supreme Court in Fowler v. Hults, 138 Tex. 636, 161 S.W.2d 478, 481 stated that the purpose of the Act is "to regulate the sale of securities and protect the public against the frauds of those who sell them."

The Trial Court found that Dillingham was not, in 1953 or 1954, engaged, either temporarily or permanently, in selling securities and that the sale made by Dillingham to Dunnam was in the course of a bona fide personal investment of his personal holdings.

The findings of fact in sequence are that the contract was executed, that appellant was a registered securities dealer, and that Rader was a registered securities dealer; that Dillingham was not a dealer in securities; that the appellees were the owners of oil leases on 12,000 acres of land in Burnet County; that appellees sold to appellant leases covering approximately 4,700 acres; that appellees fulfilled the conditions of the contract dated May 17, 1954, by procuring new leases in the name of appellant on 4,987.67 acres and furnished abstracts of title; that appellant sold the leases to Gulf at the rate of $4 per acre.

The Court concluded as a matter of law that:

"1. The instrument dated May 17, 1954, being Plaintiffs' Exhibit 1 in the above styled and numbered cause, is a valid and binding contract between plaintiffs and defendant.

"2. Defendant is obligated to pay to plaintiffs the sum of $9,704.27 plus interest on said sum at the rate of six per cent per annum since November 8, 1954, until the date of judgment, June 3, 1960, plus interest on the total of said amounts at the rate of six per cent per annum from the date of judgment, June 3, 1960, until paid in full.

"3. The transaction between plaintiffs and defendant was exempt under the provisions of Paragraph 3(i) of Article 600–a, Vernon's Texas Statutes.

"4. The transaction between plaintiffs and defendant was exempt under Section 3(c) of Article 600–a of Vernon's Texas Statutes.

"5. Article 600–a, Vernon's Texas Statutes, did not apply to the transaction between plaintiffs and defendant ·because said Act did not operate to regulate purchases or to protect sellers from purchasers."

■ The Act does not operate to regulate buyers of securities and does not apply to individuals acting as agents or employees for prospective purchasers.

Kadane v. Clark, 135 Tex. 496, 143 S.W. 2d 197; Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011.

■ It is our opinion that the transaction forming the basis of this suit is exempt under subsection (i) of Sec. 3, copied above, and is, therefore, expressly exempted from the provisions of Sec. 33b, above, requiring a license in order to maintain a suit for compensation for services rendered in the sale of securities, as defined in the Securities Act.

It was proved, and is conceded, that appellant was a registered dealer under the Act when he entered into the contract for the purchase of the oil leases held by appellees and at all subsequent pertinent times, and no question is raised that he was not "actually engaged in buying and selling securities" as provided in Sec. (i).

Sec. (i) contains no limitation on whom the seller of securities may or may not be. The only requisite to the exemption there made is that the sale be to a "registered dealer" who is actually engaged in buying and selling securities.

It is not necessary that we determine whether or not the sale was made by appellees or by the landowners. Of controlling importance was the undisputed fact that the purchaser, appellant, was a registered dealer.

Neither is it necessary that we determine any other question presented, except as to the allowance of interest.

Interest was allowed on the amount due under the contract from November 8, 1954 to date of judgment. The contract sued on did not provide for interest and plaintiffs' pleading did not ask for interest prior to judgment, nor was the amount of damages laid in an amount large enough to include interest.

Appellant takes the position that the court erred in allowing interest prior to the date of judgment.

Plaintiffs did not ask for interest prior to judgment but sought recovery of $9,704.-24, together with exemplary damages, attorney's fees, costs and for such other and further relief both in law and in equity to which they may be justly entitled.

Article 5070, Vernon's Ann.Civ.St., provides that when no specified rate of interest is agreed upon, that six per cent interest shall be allowed on all written contracts ascertaining the sum payable after the sum is due and payable, and on open accounts from the 1st day of January after the same are made.

Appellant says that the written contract did not and could not from its face ascertain the sum payable, and cites cases such as West Lumber Co. v. Henderson, Tex.Com. App., 252 S.W. 1044 and Texas & N. O. R. Co. v. Lide, Tex.Civ.App., 144 S.W.2d 685, er. dism.

Appellees contend that they were entitled to interest under Article 5070, or interest eo nomine as called by courts, and entitled to interest for the wrongful detention of money due them by appellant.

Interest under the statute may be awarded by the court under pleadings for "such other and further relief, both in law and in equity, to which they may be justly entitled."

The contract provided that " 'Second Party' * * * agrees * * * to * * * deposit in the Temple National Bank the sum of $2.00 per acre to the credit of First Party * * * with due allowance or reserve for rejected titles, if any, and cost of abstracts not to exceed $550.00"

Appellant received payment in full by November 5, 1954 on which date he was obligated to deposit to appellees' credit the sum of $2 per acre for 4,986.67 acres accepted by Gulf, at which time appellant had spent all he had to·spend for abstracts, and any deduction for abstracts was then ascertained.

On November 8, 1954, appellant wrote a letter to appellees advising them that he considered that they had breached the contract and wanted some discount.

The appellant became liable for interest from the date he received payment from Gulf to appellees.

Federal Life Ins. Co. of Chicago v. Kriton, 112 Tex. 532, 249 S.W. 193; John F. Buckner & Sons v. Arkansas Fuel Oil Corp., Tex.Civ.App., 319 S.W.2d 204, er. ref., N.R.E.

Finding no reversible error the judgment of the Trial Court is affirmed.

Affirmed.