493 F.2d 1285
 14 UCC Rep.Serv. 156
 The WICHITA EAGLE AND BEACON PUBLISHING COMPANY, INC.,
Plaintiff-Appellant,
v.
PACIFIC NATIONAL BANK OF SAN FRANCISCO, Defendant-Appellee.
The WICHITA EAGLE AND BEACON PUBLISHING COMPANY, INC.,
Plaintiff-Appellee,
v.
PACIFIC NATIONAL BANK OF SAN FRANCISCO, Defendant-Appellant.
 Nos. 71-1573, 71-1849.
 United States Court of Appeals, Ninth Circuit.
 Feb. 22, 1974, Rehearing Denied May 13, 1974.
 
 Gerrit H. Wormhoudt (argued), Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Bledsoe, Smith, Cathcart, Johnson & Rogers, San Francisco, Cal., for plaintiff-appellant.
 Paul A. Renne (argued), Cooley, Crowley, Gaither, Godward, Castro & Huddleson, Jonas, Matthews, Pfotenhauer & King, San Francisco, Cal., Rockwell, Fulkerson & Clarke, San Rafael, Cal., for defendant-appellee.
 Before CHAMBERS and BROWNING, Circuit Judges, and KING,* District judge.
 OPINION
 PER CURIAM:
 
 
 1
 The facts are summarized in the district court's opinion, 343 F.Supp. 332 (N.D.Cal.1971).
 
 
 2
 We do not agree with the district court that the instrument sued upon is a letter of credit, though it is so labeled. Rather, the instrument is an ordinary guaranty contract, obliging the defendant bank to pay whatever the lessee Circular Ramp Garages, Inc., owed on the underlying lease, up to the face amount of the guaranty. Since the underlying lease clearly contemplated the payment of $250,000 in case of default, and since this provision appears to be a valid liquidated damages clause, the judgment below must be modified to award the plaintiff $250,000 plus interest.
 
 
 3
 We do not base our holding that the instrument is not a letter of credit on the fact that payment was triggered by default rather than performance or on the fact that the instrument was written in a lease context, for we recognize that the commercial use of letters of credit has expanded far beyond the international sales context in which it originally developed. See, e.g., Fair Pavilions, Inc. v. First National Bank, 19 N.Y.2d 512, 281 N.Y.S.2d 23, 227 N.E.2d 839 (Ct.App.1967); Fidelity Bank v. Lutheran Mutual Life Insurance Co., 465 F.2d 211 (10th Cir. 1972). See also Harfield, Code, Customs, and Conscience in Letter-of-Credit Law, 4 U.C.C.L.J. 7 (1971).
 
 
 4
 The instrument involved here strays too far from the basic purpose of letters of credit, namely, providing a means of assuring payment cheaply by eliminating the need for the issuer to police the underlying contract. Harfield, The Increasing Use of Domestic Letters of Credit, 4 U.C.C.L.J. 251, 257 (1972); Ward & Harfield, Bank Credits and Acceptances 46, 136-38 (1958). The instrument neither evidences an intent that payment be made merely on presentation on a draft nor specifies the documents required for termination or payment. To the contrary, it requires the actual existence in fact of most of the conditions specified: for termination or reduction, that the city have refused a building permit; for payment, that the lessee have failed to perform the terms of the lease and have failed to correct that default, in addition to an affidavit of notice.
 
 
 5
 True, in the text of the instrument itself the instruments is referred to as a 'letter of credit,' and we should, as the district court notes, 'give effect wherever possible to the intent of the contracting parties.' 343 F.Supp. at 338. But the relevant intent is manifested by the terms of the agreement, not by its label. Bekins v. Lindsay-Strathmore Irrigation District, 114 F.2d 680, 684 (9th Cir. 1940). And where, as here, the substantive provisions require the issuer to deal not simply in documents alone, but in facts relating to the performance of a separate contract (the lease, in this case), all distinction between a letter of credit and an ordinary guaranty contract would be obliterated by regarding the instrument as a letter of credit.
 
 
 6
 It would hamper rather than advance the extension of the letter of credit concept to new situations if an instrument such as this were held to be a letter of credit. The loose terms of this instrument invited the very evil that letters of credit are meant to avoid-- protracted, expensive litigation. If the letter of credit concept is to have value in new situations, the instrument must be tightly drawn to strictly and clearly limit the responsibility of the issuer.
 
 
 7
 The bank contends that whatever the nature of the instrument, by its terms it had either reduced to $50,000 or terminated entirely by the time the draft was drawn. But the district court found that the lessee 'failed to use due diligence to obtain the necessary building permits,' 343 F.Supp. at 340, and the lease provides that the lessee must 'use due diligence to obtain all permits necessary.' Since the instrument is a guaranty rather than a letter of credit, the bank should not be able to interpose a defense not available to the lessee unless such an intent is clear in the instrument. Therefore, we interpret the termination provisions to be subject to the duty of due diligence imposed by the lease. Since the lessee did not proceed with due diligence, it was not entitled to regard the building permit as refused, and the bank was not entitled to terminate the instrument because of the lessee's representations to that effect.
 
 
 8
 Since the instrument is not a letter of credit, the amount due depends upon what the lessee owes for the admitted breach. The underlying lease contemplates forfeiture of the entire $250,000 security in the event of total breach. The issue is whether the forfeiture clause is a valid provision for liquidated damages, or provides for a penalty and is therefore unenforceable.
 
 
 9
 The district court found that the lessor's damages 'might well have been the face amount of the draft presented, $250,000.' We take this to be a finding that the amount of actual damages that would flow from a total breach was uncertain and that the amount set was a reasonable forecast of such damages. Indeed, the defendant bank seems to concede that these two criteria for enforceable stipulated damages have been met; it argues only that no 'intent' to liquidate damages was proven. Brief for Appellee and Cross-Appellant at 23-30.
 
 
 10
 But 'intent' to liquidate damages, as opposed to intent to provide a penalty for breach, does not appear to be an independent element for enforcement of liquidation clauses in either Kansas or California.[1] See Cal.Civ.Code 1671; White Lakes Shopping Center, Inc. v. Jefferson, 208 Kan. 121, 490 P.2d 609, 614-615 (1971). Although the California courts sometimes talk in terms of intent, in fact the cases turn solely on the reasonableness of the estimate and the difficulty of determining actual damages. Sweet, Liquidated Damages in California, 60 Calif.L.Rev. 84, 136-38 (1972). See also 5 S. Williston, Contracts 778 (3d ed. 1961).
 
 
 11
 The district court's fact finding on the necessary prerequisites for enforcing a stipulated damages clause is supported by the evidence. We therefore hold the stipulated damages clause to be valid, and plaintiff is entitled to judgment for the amount stipulated. And since the claim is for a liquidated amount, plaintiff is also entitled to an award of interest from the date of the bank's refusal to honor the draft. Cal.Civ.Code 3302.
 
 
 12
 Reversed and remanded, with directions to enter judgment for plaintiff and against defendant in the amount of $250,000 together with interest thereon at the legal rate from and after May 3, 1965.
 
 
 
 *
 Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Both parties argue both Kansas and California law. Because the result is the same under the law of either state, there is no need to determine which law applies