The **REPUBLIC NATIONAL BANK OF DALLAS, Appellant,**

v.

**NORTHWEST NATIONAL BANK OF FORT WORTH, Appellee.**

No. 17995.

Court of Civil Appeals of Texas, Fort Worth.

May 4, 1978.

Rehearing Denied June 1, 1978.

Green, Gilmore, Rothpletz & Hyden, Frank B. Rynd, Dallas, for appellant.

Farris & Thompson, Thomas L. Farris, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

By this opinion we affirm the judgment of the trial court denying Republic National Bank of Dallas, as Trustee, any right of enforcement of an instrument called an Irrevocable Letter of Credit issued by Northwest National Bank of Fort Worth. The trial court denied enforcement upon a conclusion of law that "The letter of credit in question is a contract of guaranty to answer for the default of B & H Amusement Rides, Inc. and not a true letter of credit."

The instrument read as follows:

THE NORTHWEST NATIONAL BANK
7820 White Settlement Road
Fort Worth, Texas

Speegle Berry
President
IRREVOCABLE LETTER OF CREDIT
Non-Transferable February 28, 1969
American Cities Trust Company
1815 South Montclair, Oak Cliff
Dallas, Texas,
and/or its successor as Trustee
of the Perpetual Care Fund of
Crown Hill Memorial Park,
a Perpetual Care Cemetery.
Gentlemen:
We hereby open our irrevocable credit in your favor, available in the following manner and on the following terms:

1. *Transferability.* The credit is non-transferable.

2. *Drafts.* Your single draft drawn on Northwest National Bank of Fort Worth, at ten (10) days' sight, in the amount of the unpaid principal, interest and attorneys' fees then due and payable after default, pursuant to the terms of a certain Promissory Note executed January 12, 1968, by B & H Amusement Rides, Inc., payable to the order of American Cities Trust Company, which draft must

state upon its face: "Drawn under Letter of Credit of the Northwest National Bank of Fort Worth, Texas, dated February 21, 1969."

3. *Total.* The draft must not exceed Fifty Thousand and no/100 Dollars ($50,000.00).

4. *Purpose.* To be applied to the balance remaining on a certain loan evidenced by a certain Promissory Note executed January 12, 1968, by B & H Amusement Rides, Inc., payable to the order of American Cities Trust Company, secured by a security interest in and upon the inventory of B & H Amusement Rides, Inc.

5. *DOCUMENTS.* The required documents are:

(a) Original Promissory Note, executed January 12, 1968, by B & H Amusement Rides, Inc., payable to the order of American Cities Trust Company.

(b) Copy of letter advising B & H Amusement Rides, Inc. of default in the payment of the said note executed January 12, 1968, said advice letter being addressed to B & H Amusement Rides, Inc., showing receipt, and being dated not less than twenty (20) days in advance of the date of Sight Draft.

(c) Copy of letter advising E. L. Baker, Jr., Jerome I. Weiner, and Henry W. Simon, Jr. of default in the payment of the said Note executed January 12, 1968, said advice letter being addressed in care of Simon & Simon, attorneys, 816 First National Building, Fort Worth, Texas, and being dated not less than twenty (20) days in advance of the date of Sight Draft.

(d) Copy of letter which advised owners of B & H Amusement Rides, Inc. property of default in payment and resulting acceleration of the said Promissory Note dated January 12, 1968, said letter being dated not less than twenty (20) days prior to the date of Sight Draft.

6. *OBLIGATION OF ISSUER.* The Northwest National Bank of Fort Worth,

Texas, agrees with American Cities Trust Company, and/or its successor as Trustee of the Perpetual Care Fund of Crown Hill Memorial Park, a Perpetual Care Cemetery, to duly honor a proper draft drawn and negotiated in compliance with the terms of this Letter of Credit upon presentation to the office of the bank.

7. *RULES APPLICABLE.* The Credit, except as otherwise provided, is to be governed by the Uniform Commercial Code in force in the State of Texas on the date of its issuance.

Yours very truly,

NORTHWEST NATIONAL BANK

By: /s/ Speegle Berry
　　(Authorized Signature)
　　President

The face of the instrument discloses that the liability of the Northwest Bank was to come into existence only in the event of the default of B & H Amusement Rides upon its note of January 12, 1968 and as applied to the balance upon notice of such default with resulting acceleration of the note, etc., coupled with proofs relative thereto attached to the draft for the amount owing on the note in question (up to $50,000.00) presented to such bank in the prescribed form. In other words the instrument constituted a guaranty by the bank to the beneficiary that if and in the event the note obligor defaulted upon the obligation the bank would, in the place and stead of the obligor, make the beneficiary whole. (Default did occur, following which there was full compliance by Republic Bank, successor Trustee; with refusal of Northwest Bank for stated reason that because the instrument was a guaranty—and not a letter of credit—it was not liable thereon.)

■ In 3 R.C.L. 425, § 53, "Loan of Credit or Underwriting Securities" (1914), it was well stated that "A banking corporation cannot lend its credit to another by becoming a surety, indorser, or guarantor for him. It cannot for the accommodation of another indorse his note or guarantee the performance of obligations in which it has no interest. Such an act is an adventure beyond the confines of the banking business, and,

when its true character is known no rights grow out of it, though it has taken on in part the garb of a lawful transaction; and this applies to national banks. . . ." The text continues in excellent explanation of the reasons why it is that when a bank is found to have so acted its action is *ultra vires* and void.

■ On the other hand the issuance of a true letter of credit by a banking corporation constitutes legitimate banking practice. Though every letter of credit is, in a sense, a form of guaranty, *the letter of credit differs from a classical surety undertaking in that it is a primary obligation between the issuer and the beneficiary* and the issuer of the credit is not concerned with the arrangements between the beneficiary and the issuer's account party. The ordinary commercial letter of credit contains authority to the beneficiary to draw a draft, and a promise to honor the draft, given either generally to bona fide holders or to some particular person, and if it shows it was for the purpose of being produced to obtain credit, and the purchaser is within the terms of the letter, it amounts to an offer that, if he purchases the draft, it will be honored, and the offer becomes a contract when the draft is negotiated. 6 Michie, *Banks and Banking*, p. 409, "Exchange, Money, Securities, Etc.," Ch. 12, § 30, "(Letter as Contract)—Nature of Contract" (1975).

By the *Texas Business & Commerce Code*, Ch. 5, "Letters of Credit," § 5.103, "Definitions," a letter of credit means an engagement by a bank or other person, etc. that the issuer will honor drafts or other demands for payment upon the conditions specified in the credit.

■ In the *Code of Federal Regulations*, Title 12, "Banks and Banking," Ch. 1, "Comptroller of the Currency," under Subpart E—Miscellaneous, and on Guaranties and Suretyship, § 7.7016, "Letters of credit distinguished from guaranty" (1977), is stated: "A national bank may issue its own letters of credit to or on behalf of its customers in the normal course of its business:

*Provided,* That the bank's obligation may legally be described as a letter of credit and not as a mere guaranty. In order to constitute a true letter-of-credit transaction, the following elements must all be present: (a) The bank must receive a fee or other valid business consideration for the issuance of its undertaking; (b) the bank's undertaking must contain a specified expiration date or be for a definite term; (c) the bank's undertaking must not be unlimited but be up to a stated amount; (d) the bank's obligation to pay must arise only upon the presentation of specific documents and the bank must not be called upon to determine disputed questions of fact or law; (e) the bank's customer must have an unqualified obligation to reimburse the bank on the same condition as the bank has paid." Of this there has been clarification: See *Federal Register,* Vol. 42, No. 92, 24206, 24207 (May 5, 1977 interpreting ruling by Bloom, acting Comptroller of the Currency). The determination of legality of a letter of credit is by statutory law and not by departmental regulation. But statutory consideration would be construed and viewed as contradiction of the common law only where so stated or necessarily implied.

 "A guaranty is a promise to answer for the payment of some debt, or the performance of some obligation, in case of the default of another person, who is in the first instance liable for such payment or performance. A letter of credit confers authority upon the person to whom it is addressed to advance money or furnish goods on the credit of the writer (citing cases). It is well settled that the guaranty of a national bank is ultra vires." *Border Nat. Bank v. American Nat. Bank,* 282 F. 73 (CCA, Fifth Circuit, 1922).

 Whether a (purported) letter of credit is a contract of suretyship or guaranty or some more separate and independent undertaking must be determined by a consideration of the phraseology of the writing, the object sought to be accomplished thereby, and the precise obligation and conditions imposed on and assumed by the parties thereto. 6 Michie, *Banks and Banking,* p. 414, "Exchange, Money, Securities, Etc.," Ch. 12, § 31, "Construction" (1975).

While we are of the opinion that the face of the instrument itself establishes it to be a guaranty, as a guaranty is distinguished from a true letter of credit, the trial court filed findings of fact, supported by the record of the evidence, which would in any event justify the court's legal conclusion that the instrument constituted a guaranty.

Because the judgment was for Northwest Bank and not the Republic Bank as successor Trustee for American Cities Trust Company to whom the instrument was addressed, we are in no way troubled with a question of whether there should be enforcement under a theory that American Cities Trust Company, Trustee, though *in delicto* was not *in pari delicto* with Northwest Bank so that it would nevertheless be entitled to recover. Had the judgment been for Republic Bank and had there been any evidence in support it might have been that though there was illegality of the transaction as *ultra vires* for the bank there would be an entitlement by the beneficiary to enforce the contract despite the fact it was one of guaranty. However, there was no evidence presented on trial that at time the transaction was accomplished there was anything known by Northwest Bank and not known by American Cities Trust Company, Trustee, nor by the true bank customer who secured the contract for the Trustee. There was an absence of evidence that the customer had no intention of violating the law. Under the circumstances there was no occasion to depart from the general rule. *Graham v. Dean,* 144 Tex. 61, 188 S.W.2d 372 (1945).

 The points of error by Republic Bank, Trustee, are solely directed to the evidence on trial. Its complaints are that there was no evidence the instrument was a guaranty, that there was insufficient evidence to support the finding by the trial court that it was, and that the finding was contrary to the great weight and preponderance of the evidence. The points are overruled.

Judgment is affirmed.