The REPUBLIC NATIONAL BANK OF
DALLAS, Petitioner,

v.

NORTHWEST NATIONAL BANK OF
FORT WORTH, Respondent.

No. B–7731.

Supreme Court of Texas.

Dec. 29, 1978.

On Rehearing March 7, 1979.

Rehearing Denied April 4, 1979.

Green, Gilmore, Rothpletz & Hyden, Frank B. Rynd, Gardere, Parker & Dehay, Arthur Blanchard, Dallas, for petitioner.

Farris & Thompson, Thomas L. Farris, Fort Worth, for respondent.

McGEE, Justice.

The Republic National Bank of Dallas sued Northwest National Bank of Fort Worth on an instrument entitled "IRREVOCABLE LETTER OF CREDIT." The disposition of this appeal hinges on the enforceability of that instrument.

The facts of the case are virtually undisputed. In December of 1968 Ronald Hughes, Dudley Hughes, Sr., and Dudley Hughes, Jr., became interested in purchasing the stock of Crown Hill Memorial Park, Inc., corporate owner of a north Dallas cemetery. As required by the law of this state, Crown Hill had a perpetual care fund held in trust for the purpose of maintaining and caring for the grounds and physical plant of the park. American Cities Trust Company was the trustee of the fund at that time. Among the assets, and constituting a major portion of the fund, was a $50,000 promissory note made payable to the fund's trustee in five equal installments by B&H Amusement Rides, Inc. The prospective purchasers of Crown Hill were wary of this particu-

lar note and refused to close the sale as long as it was a fund asset. Consequently, on February 28, 1969 B&H caused Northwest National Bank to issue an instrument in favor of the trustee which provided:

THE NORTHWEST NATIONAL BANK
7820 White Settlement Road
Fort Worth, Texas

Speegle Berry
President

IRREVOCABLE LETTER OF CREDIT

Non-Transferable

February 28, 1969

American Cities Trust Company
1815 South Montclair, Oak Cliff
Dallas, Texas,

and/or its successor as Trustee
of the Perpetual Care Fund of
Crown Hill Memorial Park,
a Perpetual Care Cemetery.

Gentlemen:

We hereby open our irrevocable credit in your favor, available in the following manner and on the following terms:

1. *Transferability.* The credit is non-transferable.

2. *Drafts.* Your single draft drawn on Northwest National Bank of Fort Worth, at ten (10) days' sight, in the amount of the unpaid principal, interest and attorneys' fees then due and payable after default, pursuant to the terms of a certain Promissory Note executed January 12, 1968, by B&H Amusement Rides, Inc., payable to the order of American Cities Trust Company, which draft must state upon its face: "Drawn under Letter of Credit of the Northwest National Bank of Fort Worth, Texas, dated February 21, 1969."

3. *Total.* The draft must not exceed Fifty Thousand and no/100 Dollars ($50,000.00).

4. *Purpose.* To be applied to the balance remaining on a certain loan evidenced by a certain Promissory Note executed January 12, 1968, by B&H Amusement Rides, Inc., payable to the order of American Cities Trust Company, secured by a security interest in and upon the inventory of B&H Amusement Rides, Inc.

5. *DOCUMENTS.* The required documents are:

(a) Original Promissory Note, executed January 12, 1968, by B&H Amusement Rides, Inc., payable to the order of American Cities Trust Company.

(b) Copy of letter advising B&H Amusement Rides, Inc. of default in the payment of the said note executed January 12, 1968, said advice letter being addressed to B&H Amusement Rides, Inc., showing receipt and being dated not less than twenty (20) days in advance of the date of Sight Draft.

(c) Copy of letter advising E. L. Baker, Jr., Jerome I. Weiner, and Henry W. Simon, Jr. of default in the payment of the said Note executed January 12, 1968, said advice letter being addressed in care of Simon & Simon, attorneys, 816 First National Building, Fort Worth, Texas, and being dated not less than twenty (20) days in advance of the date of Sight Draft.

(d) Copy of letter which advised owners of B&H Amusement Rides, Inc. property of default in payment and resulting acceleration of the said Promissory Note dated January 12, 1968, said letter being dated not less than twenty (20) days prior to the date of Sight Draft.

6. *OBLIGATION OF ISSUER.* The Northwest National Bank of Fort Worth, Texas, agrees with American Cities Trust Company, and/or its successor as Trustee of the Perpetual Care Fund of Crown Hill Memorial Park, a Perpetual Care Cemetery, to duly honor a proper draft drawn and negotiated in compliance with the terms of this Letter of Credit upon presentation to the office of the bank.

7. *RULES APPLICABLE.* The Credit, except as otherwise provided, is to be governed by the Uniform Commercial Code in force in the State of Texas on the date of its issuance.

Yours very truly,

NORTHWEST NATIONAL BANK

By: /s/ Speegle Berry
(Authorized Signature)
President.

After consulting with legal counsel and the Commissioner of the Texas State Banking Department, the purchasers accepted the letter of credit and closed the sale of Crown Hill.

After making a few payments, B&H defaulted on the note. The successor trustee, Republic National Bank, thereupon presented all the required documents along with a draft in the amount of $45,104.75 to Northwest National Bank. It is undisputed that this presentment was in full compliance with the letter of credit terms, but Northwest nonetheless refused to honor the draft. Republic then filed suit to recover damages, alleging its demand and Northwest's dishonor. After a trial before the court, the trial judge rendered judgment for Northwest, concluding that the instrument was an ultra vires contract of guaranty and consequently unenforceable against a national bank. The court of civil appeals affirmed. 566 S.W.2d 358. We reverse the judgments below and render judgment for Republic.

The central issue presented is whether the instrument issued by Northwest is a valid and intra vires letter of credit or an ultra vires guaranty agreement. Since we have been unable to locate any Texas case law pertinent to this particular question, we will freely consult decisional authority from other jurisdictions in addition to the guidance provided by Chapter 5 of the Texas Business and Commerce Code.

Republic National Bank, as our petitioner, contends that the instrument is a valid and intra vires letter of credit, and that, even if it should be found that the instrument is a guaranty, it nonetheless should be enforced against Northwest. Northwest National Bank replies that the instrument is unenforceable as a guaranty because

paragraph 4 essentially provides that the purpose of the credit is to guarantee an existing note and to protect payment in the event of default. As such, Northwest reasons that the issuance of the instrument was an ultra vires act since traditional thought has been that national banks are without authority to act as a guarantor or surety for the performance of contracts made by others. *See Border National Bank v. American National Bank*, 282 F. 73, 77–78 (5th Cir. 1922); Harfield, *The National Bank Act and Foreign Trade Practice*, 61 Harv.L.Rev. 782, 788 (1948) (collected authorities). Inasmuch as we hold that the instrument in question qualifies as an enforceable and intra vires letter of credit, we deem it unnecessary to express a further opinion as to whether a guaranty made by a national bank may be enforced against it.

Generally, a true letter of credit is the third contract in a complex of three independent contracts. The first contract is the agreement between parties to the underlying obligation; typically, this is the contract between the obligor and obligee. The second contract is ordinarily between the bank or other person (the issuer) and the obligor (the account party), which precipitates the issuance of the letter of credit. The third contract, or the letter of credit, is between the issuer and the obligee (the beneficiary), which provides that the issuer will make payment to the beneficiary upon presentation of a draft and certain documents (a documentary draft) or simply upon the presentation of a draft (a clean letter). *See Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 464–65 (2d Cir. 1970); R. Braucher & R. Riegert, Introduction to Commercial Transactions 360 (1977).

Chapter 5 of the Texas Business and Commerce Code recognizes that a bank may issue a letter of credit.[1] Section 5.102(a)(1)

---

1. The United States Comptroller of Currency also acknowledges that National banks may issue letters of credit.

A national bank may issue letters of credit permissible under the Uniform Commercial Code or the Uniform Customs and Practice for Documentary Credits to or on behalf of its customers. As a matter of sound banking practice, letters of credit should be issued in conformity with the following: (a) Each letter of credit should conspicuously state that it is a letter of credit or be conspicuously entitled as such; (b) the bank's undertaking should contain a specified expiration date or be for a definite term; (c) the bank's undertaking should be limited in amount; (d) the

specifically provides that the scope of the chapter encompasses "a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment." Furthermore, section 5.103(a)(1) provides in pertinent part:

> " 'Credit' or 'Letter of Credit' means an engagement by a *bank* or other person made at the request of a customer and of the kind within the scope of this chapter (section 5.102) that the issuer will honor drafts or other demands for payment upon compliance with conditions specified in the credit. . . ." *Id.* (Emphasis added).

█ By some estimates the "traditional credit" or "commercial credit" has been in use in one form or another since 1100 A.D., finding its impetus in the insecurity surrounding international sales of tangible goods. *See* Verkuil, *Bank Solvency and Guaranty Letters of Credit*, 25 Stan.L.Rev. 716, 716 n. 1 (1973). Since its genesis, however, the use of letters of credit has expanded far beyond this tangible-goods-in-sales context. One particular development has been the "standby credit" or "guaranty credit" whereby the issuer agrees to pay the beneficiary upon presentment of documentation indicating that the account party has defaulted on a payment obligation. Distinguished from the traditional credit, the standby credit is used primarily to finance or secure an underlying intangible or money indebtedness undertaken by the account party such as a promissory note.[2] Although recognizing that there is no express statutory foundation, most courts and commentators have predicated their approval of standby credits on the basis of section 5.102(c) and comment 2 to that section which provide that Chapter 5 was not codified with the intent of "stultifying further development of this useful financing device." *See, e. g., Barclay's Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224,

---

bank's obligation to pay should arise only upon the presentation of a draft or other documents as specified in the letter of credit, and the bank must not be called upon to determine questions of fact or law at issue between the account party and the beneficiary; (e) the bank's customer should have an unqualified obligation to reimburse the bank for payments made under the letter of credit.

12 C.F.R. § 7.7016 (1978). The *Comptroller* explained the regulation thusly:

Clarification was deemed desirable because some national bank issuers of letters of credit, believing the five standards listed in the previous ruling to be mandatory, have refused to honor drafts drawn under their letters of credit on the ground that the instrument failed to meet the Comptroller's standards and was therefore not a "true letter of credit transaction." As revised, the ruling makes clear that, while national banks for safe and sound banking purposes should issue their letters of credit in conformity with the ruling's standards, the determination of a letter of credit's legality and whether it should be honored is governed solely by statutory law, such as the Uniform Commercial Code, or by convention, such as the Uniform Customs and Practices for Documentary Credits.

42 Fed.Reg. 24206 (1977).

**2.** *See, e. g., Bossier Bank & Trust Co. v. Union Planter's Nat'l Bank*, 550 F.2d 1077, 1079–81 (6th Cir. 1977); *Barclay's Bank D.C.O. v. Mer-* cantile Nat'l Bank, 481 F.2d 1224, 1231–32 (5th Cir. 1973); *Baker v. National Boulevard Bank*, 399 F.Supp. 1021, 1022 (N.D.Ill.1975); F. Beutel, Bank Officer's Handbook of Commercial Banking Law § 19–55 (4th ed. 1974 & Supp. 1977).

Under 12 C.F.R. § 7.1160(a) (1978) the Comptroller of Currency has defined a standby letter of credit as:

[A]ny letter of credit, or similar arrangement however named or described, which represents an obligation to the beneficiary on the part of the issuer (1) to repay money borrowed by or advanced to or for the account of the account party or (2) to make payment on account of any indebtedness undertaken by the account party, or (3) to make payment on account of any default by the account party in the performance of an obligation.

*Id.* In footnote 1 to this section the Comptroller further explained:

[T]he term "standby letter of credit" does not include commercial letters of credit and similar instruments where the issuing bank expects the beneficiary to draw upon the issuer, which do not "guaranty" payment of a money obligation and which do not provide for payment in the event of default by the account party.

*Id.* § 7.1160 n. 1. see *id.* § 208.8(d)(1) (similar definition provided by Federal Reserve Board); *Id.* § 337.2(a) (similar definition provided by FDIC).

1231–32 nn. 8–12 (5th Cir. 1973), *cert. dismissed,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). *Brummer v. Banker's Trust,* 231 S.W.2d 298, 299–30 (S.C.1977); Murray, *Letters of Credit in Nonsale of Goods Transactions,* 30 Bus.Law. 1103, 1112 (1974–75). *See generally* Tex.Bus. & Com. Code Ann. § 1.102(a)–(b) Comment 1 (Tex. U.C.C.1968).

Standby credits have also been recognized as an incident of the banking business by the Comptroller of the Currency, 12 C.F.R. § 7.1160(a)–(b) (1978), the Board of Governors of the Federal Reserve System, *Id.* § 208.8(d)(1)–(2), and the Federal Deposit Insurance Corporation, *Id.* § 337.2(a)–(b). Any troubling economic problems presented by a bank's issuance of these credits appear to be resolved by applicable federal regulations. For example, standby credits are regarded as the functional equivalent of loans and are expressly made subject to the bank's statutory lending limitations. *Id.* §§ 7.1160(b); 208.8(d)(2); 337.2(b). Additionally, Federal Reserve regulations require that the issuing bank undertake a credit analysis of the account party "equivalent to that applicable to a potential borrower in an ordinary loan situation." *Id.* § 208.8(d)(2)(ii). Therefore, the risk to the issuing bank's shareholders and depositors appears to be no more dangerous than the risk incurred by the making of a normal loan. *See generally* Note, Guaranty Letters of Credit: Problems & Possibilities, 16 Ariz. L.Rev. 822, 831–32 (1974).

 It has been suggested that while a standby or guaranty credit may meet the formal requisites of a letter of credit, such an instrument is in substance a guaranty or suretyship contract and, thus, under traditional analysis beyond the bank's power to issue. *See,* e. g., Comment, *Recent Extensions in the Use of Commercial Letters of Credit,* 66 Yale L.J. 902, 913–14 (1957). Al-

though it is true that every letter of credit appears to function as a guaranty, there are several subtle but important distinctions.[3] A true guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform. *Clymer v. Terry,* 50 Tex.Civ.App. 300, 109 S.W. 1129, 1131 (1908, no writ); L. Simpson, Handbook of the Law of Suretyship § 6, at 10 (1950). Since a guaranty is ancillary to the underlying contract, a dispute as to the rights and obligations of the guarantor can only be resolved by a factual determination of the rights and obligations of the parties to the underlying contract. *Asociacion De Azucareros De Guatemala v. United States National Bank,* 423 F.2d 638, 641 (9th Cir. 1970). A bank that issues a credit, however, acts as a principal, not as an agent of the account party, and it engages its own credit. Tex.Bus. & Com.Code Ann. § 5.117 Comment 1 (Tex.U.C.C.1968). Thus, upon the issuance of a credit, the bank assumes a primary obligation independent of the underlying contract and engages that it will pay upon the presentation of documents required by the instrument. *Id.* §§ 5.114(a) Comment 1; 5.109 Comment 1; *see Border National Bank v. American National Bank,* 282 F. 73, 77–78 (5th Cir. 1922). If a conforming presentation of documents is made, the issuer of a credit is obligated to pay without reference to the rights and obligations of the parties to the underlying contract. Tex.Bus. & Com.Code Ann. § 5.114(a) (Tex.U.C.C.1968); Arnold & Bransilver, *The Standby Letter of Credit—The Controversy Continues,* 10 U.C.C.L.J. 272, 275 (1978).

The Fifth Circuit case of *Barclay's Bank, supra,* presents a good illustration of this distinction in the context of a standby credit securing a purely monetary obligation.

---

**3.** In Harfield, *Code Treatment of Letters of Credit,* 48 Cornell L.Q. 92 (1962–1963) it was stated:

A letter of credit always serves as a guaranty. This does not mean that it is a guaranty. A letter of credit *is* an identical twin to a guaranty, but the fact that the two things

look alike and may be used for the same purpose and are difficult to distinguish one from the other does not mean that there are not differences, which, however subtle, are of major importance.

*Id.* at 93 (footnote omitted).

Allied Mortgage Company issued a credit in favor of the Barclay's Bank providing that it would pay any indebtedness upon proper documentation that one Bay Holding Company had failed to pay Barclay's on an underlying promissory note. At Allied's insistence the Mercantile Bank issued a confirming credit in favor of Barclay's. Bay Holding subsequently defaulted on the note and Barclay's timely presented its documentary draft for the unpaid amount to Allied under its credit. This draft was dishonored. Thereafter, Barclay's presented a documentary draft to Mercantile under the confirming credit, but this draft was also dishonored. As a defense to Barclay's subsequent suit to recover damages, Mercantile asserted that its obligation was a guaranty, and as such an ultra vires act of a national bank. The circuit court dismissed this argument on appeal and stated: "A confirming bank by confirming a credit becomes *directly obligated* on the credit to the extent of its confirmation *as though it were its issuer.*" 481 F.2d at 1236 (emphasis added) (quoting U.C.C. § 5–107(2)). From this analysis it follows that the issuer's liability must also be direct. *See id.* at 1236; Note, *Guaranty Letters of Credit: Problems & Possibilities,* 16 Ariz.L.Rev. 822, 835 (1974).

This is not to say, however, that a national bank is without limit to issue instruments under the guise that they are credits. In *Wichita Eagle & Beacon Publishing Co. v. Pacific National Bank,* 493 F.2d 1285 (9th Cir. 1974) a letter of credit was issued in favor of certain lessors by Pacific National Bank providing that the bank would pay against a draft and documents indicating that the lessees had failed to complete construction of a parking garage. After default Wichita Eagle presented the draft and required documents but the presentment was dishonored. The district court held the instrument to be a valid credit but the circuit court reversed, holding that the instrument was an ordinary guaranty. The court noted that its disposition of the appeal was not predicated on the fact that payment was triggered by default, but rather, the instrument involved strayed too far from the basic purpose of a credit. *Id.*

at 1286. Instead of requiring the mere examination of documents to ascertain liability, the credit required the bank to undertake actual determinations of fact regarding the underlying obligation. This, the court concluded, invited the very evil that letters of credit were designed to avoid —protracted, expensive litigation. *Id.* at 1286–87; *see Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 323 (1975).

We are persuaded by these authorities and therefore hold that under Chapter 5 of our commercial statutes the test of a true letter of credit may be stated as follows: The engagement is a letter of credit if the issuer has a *primary* obligation that is dependent *solely* upon presentation of conforming documents and not upon the factual performance or nonperformance by the parties to the underlying transaction. In construing the present instrument under this test, we note at the outset that letters of credit are governed by the construction rules of ordinary contracts. *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 465–66 (2d Cir. 1970); 6 Michie on Banks & Banking § 31, at 414 (1975 & Supp.1978). In Texas a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties. If two constructions are possible, a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless. *Portland Gasoline Co. v. Superior Marketing Co.,* 150 Tex. 533, 535, 243 S.W.2d 823, 824 (1951); *Monesson v. Champion International Corp.,* 546 S.W.2d 631, 631 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.).

Northwest's instrument is labeled "IRREVOCABLE LETTER OF CREDIT." Paragraph 6 expressly provides that Northwest will duly honor a draft properly drawn and in compliance with the terms of the instrument. Paragraph 2 requires that the draft state a proper recital along with the amount due and payable after default.

Paragraph 5 lists the required documents to be attached. A fair and reasonable reading of paragraph 4 in relation to the rest of the instrument reveals that the purpose of the letter of credit is to pay principal, interest and attorney's fees pursuant to the terms of the *enclosed* note. While it is true that the instrument refers to the underlying transaction, it has been held that such general references may be disregarded as surplusage unless they impose some condition to the issuer's liability. *Pringle-Associated Mortgage Corp. v. Southern National Bank*, 571 F.2d 871, 874 (5th Cir. 1978); *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107, 1112 (W.D.Pa. 1976). Nowhere does it appear that Northwest was required to go outside the presented draft and documents to determine its liability. To the contrary, the instrument contains only two conditions precedent to payment: (1) presentation of a properly drawn draft; (2) presentation of four specific documents.

Finally, we are not persuaded by Northwest's argument that the present instrument is a guaranty because it secures an existing promissory note. Since by its very nature a letter of credit is a separate contract independent of the underlying transaction, it necessarily follows that there is no legal distinction between a letter of credit issued before, after, or concomitantly with the consummation of the underlying transaction. As aforementioned, the issuer of a true letter of credit creates a primary obligation dependent solely upon presentation of conforming documents. *Wichita Eagle & Beacon Publishing Co. v. Pacific National Bank*, 493 F.2d at 1286; *Barclay's Bank D.C.O. v. Mercantile National Bank*, 481 F.2d at 1236; H. Harfield, Bank Credits and Acceptances 31 (5th ed. 1974).

Having fully considered the policy behind our commercial statutes along with all relevant authorities, we conclude as a matter of law that the instrument before us is a valid, intra vires, and enforceable letter of credit. The judgments below are reversed and judgment is rendered for Republic National Bank of Dallas.

GREENHILL, C. J., not sitting.

## ON MOTION FOR REHEARING

Republic National Bank and Northwest National Bank have both filed motions for rehearing. Republic argues that it is entitled to recover prejudgment interest under article 5069–1.03 based upon its petition in the trial court which contained a prayer for general relief seeking "other relief, both general and special, at law and in equity, to which it may show itself justly entitled." This motion is granted. Northwest in its motion for rehearing reasserts that the letter of credit is unenforceable as a guaranty agreement. This motion is overruled.

■■■■ Prejudgment interest is that interest calculated on the sum payable to the plaintiff from the time of his loss or injury to the time of judgment. It is recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 488 (Tex. 1978) (collected authorities); *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 95–96 (Tex.1976). One specific situation where prejudgment interest may be recovered is governed by statute. Article 5069–1.03 of our revised civil statutes provides in pertinent part:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable . . . . .

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03.

■■■ Republic contends that its letter of credit falls within the purview of this statute and that it is entitled to prejudgment interest based on its general prayer for relief. We agree. Texas courts have repeatedly recognized that under article 5069–1.03, an award of prejudgment interest may be predicated on a prayer for general relief if the plaintiff pleads and proves a written contract ascertaining a sum pay-

able at a date certain prior to judgment. *T J Service Co. v. Major Energy Co.,* 552 S.W.2d 598, 601 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *King Optical v. Automatic Data Processing of Dallas, Inc.,* 542 S.W.2d 213, 217 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); *Liberty Mutual Insurance Co. v. General Insurance Corp.,* 517 S.W.2d 791, 799 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Combined Insurance Co. of America v. Kennedy,* 495 S.W.2d 306, 308 (Tex.Civ.App.—Eastland 1973, writ ref'd n. r. e.); *Tennessee Life Insurance Co. v. Nelson,* 459 S.W.2d 450, 454 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); *Dunnam v. Dillingham,* 345 S.W.2d 314, 319 (Tex.Civ.App.—Austin 1961, no writ). For example, in the *Kennedy* case the plaintiff brought suit against the insurance company after it discontinued disability payments under an injury and sickness policy. Judgment was for the plaintiff and the insurance company appealed, contending, among other things, that prejudgment interest was unauthorized under the plaintiff's pleadings and prayer. The court of civil appeals disagreed. After noting that the contract in question fell within the purview of article 5069–1.03, the court held that prejudgment interest was properly awarded on a prayer that requested "such other and further relief, general and special in law and in equity, including costs of court, to which plaintiff shall be entitled." 495 S.W.2d at 308.

This line of cases does not conflict with the rule set forth in *Black Lake Pipe Line Co. v. Union Construction Co., supra* at 96. In that case the plaintiff sought prejudgment interest as an element of *damages* in his quantum meruit action and not on the basis of a written contract under article 5069–1.03. Where prejudgment interest is sought at common law as an element of *damages,* the plaintiff must plead for it. Such is not the case where prejudgment interest is sought on the basis of a written contract fitting the description of article 5069–1.03. An award of this statutory interest, or interest *eo nomine* as it is known, may be supported by a prayer for general relief. *Combined Insurance Co. of America*

*v. Kennedy, supra* at 308; *Dunnam v. Dillingham, supra* at 319.

This distinction was recognized in *San Antonio & A.P. Ry. Co. v. Collins,* 61 S.W.2d 84 (Tex.Com.App.1933, judgm't adopted), where the court stated:

> The suit being, *not on the contract,* because no labor was performed, *but for damages* . . . the Court of Civil Appeals therefore erred in holding that this suit comes within the terms of article 5070, [present article 5069–1.03] and interest should be allowed as a matter of legal right, although not alleged or prayed for, under a prayer for general relief.

*Id.* at 90 (emphasis added). Therefore, if the suit is on a written contract fitting the requirements of the statute, the award of prejudgment interest may be supported by a prayer for general relief. ·

We hold that, under article 5069–1.-03, prejudgment interest may be awarded based on a prayer for general relief if the plaintiff pleads and proves a written contract ascertaining a sum payable on a date certain. In the present case Republic has plead and proved an enforceable letter of credit. The letter of credit and accompanying documents met the requirements of the statute in that no interest rate is stipulated, an ascertainable sum is stated, and a specific time for payment is provided. Northwest should therefore be required to pay the applicable prejudgment interest rate under the statute inasmuch as it had the extended use and benefit of the principal sum.

Republic's motion for rehearing is granted and the judgment is reformed to reflect interest at a rate of 6 percent from March 8, 1971 to October 6, 1977. Northwest's motion for rehearing is overruled.

GREENHILL, C. J., not sitting.