GUNN–OLSON–STORDAHL JOINT
VENTURE, Appellant,

v.

The EARLY BANK, Early, Texas, and
Ben D. Sudderth, Appellees.

No. 11–87–204–CV.

Court of Appeals of Texas,
Eastland.

March 31, 1988.

Rehearing Denied May 5, 1988.

John J. McKetta, III, Graves, Dougherty, Hearon & Moody, Austin, Stephen Ellis, Dist. Atty., Brownwood, for appellant.

Jim Parker, Comanche, Robert A. Junell, Webb, Stokes, Sparks, Parker, Junell & Choate, San Angelo, Gary R. Price, Price & Aduddell, G. Lee Haney, Brownwood, Ben D. Sudderth, Comanche, for appellees.

## OPINION

McCLOUD, Chief Justice.

Gunn–Olson–Stordahl Joint Venture presented an instrument labeled "letter of credit" to The Early Bank for payment. The Early Bank refused to honor the "letter of credit" and filed suit interpleading Gunn–Olson–Stordahl and Joe Gilbreth.[1] The Early Bank tendered the disputed funds into the registry of the court. Ben D. Sudderth, who had signed the instrument in his capacity as Chairman of the Board of The Early Bank, intervened stat-

ing that he had agreed to hold the bank harmless on the "letter of credit."[2] Sudderth filed a motion for summary judgment which was granted. From this judgment, the joint venture appeals. We reverse and remand.

On July 25, 1984, the joint venture entered into a real estate sales contract in which the joint venture agreed to sell, and Joe Gilbreth agreed to buy, certain subdivided lots in Travis County for $3,115,000. The contract required Gilbreth to: (1) purchase a certain number of lots within a specified time following the "completion date"; (2) pay the balance of the $3,115,000 purchase price on or before one year from the completion date; and (3) pay quarterly interest on such balance until the full purchase price had been paid. The joint venture agreed to execute and deliver general warranty deeds conveying each lot to Gilbreth.

In the contract, the "Completion Date" was defined as the date when:

[T]he construction of the streets providing access to the Lots and the water and wastewater facilities to the boundary of the Lots have been completed to the standards required by the appropriate governmental entity or utility providing such service, as confirmed by the engineers for the South Austin Growth Corridor Municipal Utility District No. 1.

The contract also stated:

Simultaneously with the execution hereof, Buyer [Gilbreth] has delivered to Seller [the joint venture] an irrevocable letter of credit issued by The Early Bank in Early, Brown County, Texas, in the amount of Two Hundred Thirty-one Thousand and No/100 Dollars ($231,-000.00), with an expiration date of no sooner than eighteen (18) months from the date hereof, which letter of credit entitles Seller to draw against the full amount thereof and retain such sum as liquidated damages hereunder *solely*

1. Claims involving Joe Gilbreth were severed.

2. The Federal Deposit Insurance Corporation (FDIC) was appointed Receiver of The Early Bank and was substituted as a party. By stipu-

lation, the FDIC and The Early Bank were dismissed. Sudderth assumed any liability The Early Bank incurred under the instrument in controversy.

*upon written request of Seller to the issuer of said letter of credit stating Buyer has defaulted under the terms hereof.* Upon Buyer's complete performance hereunder, said letter of credit shall be returned to Buyer at the closing of the sale and purchase of the last Lot covered hereby. (Emphasis added)

In the event of Gilbreth's default, the parties to the contract agreed:

If Buyer shall default in the performance of this Contract, Seller not being in default, Seller may, at its election, terminate this Contract, draw against the full amount of said letter of credit and retain all sums (including, but not limited to, the proceeds of the letter of credit) theretofore paid by Buyer to Seller under this Contract as liquidated damages for Buyer's breach of this Contract or Seller may enforce specific performance of this Contract.

The instrument issued by the bank provided:

THE EARLY BANK

July 25, 1984

LETTER OF CREDIT

TO:
Gunn–Olson–Stordahl Joint Venture
c/o William T. Gunn III
601 Westlake High Drive
Austin, Texas 78746
Gentlemen:

We hereby establish our irrevocable standby letter of credit number 104 in your favor at the request and for the account of Joe Gilbreth, for a sum not exceeding in all U.S. dollars $231,000.00, available by your clean sight draft drawn on us.

All drafts so drawn must be marked "Drawn Under Early Bank, Letter of Credit No. 104 Dated July 25, 1984". This credit expires at our counters on January 25, 1986.

The original of this letter of credit must accompany all drawings.

We engage with you that all drafts drawn under and in compliance with the terms of this credit will be duly honored by us.

*This credit is subject to* the "Uniform Customs and Practice for Documentary Credit (1974 revision) International Charter [Chamber] of Commerce Brochure Number 290" and *GUNN–OLSON STORDAHL JOINT VENTURE being in compliance with terms of Contract dated 25th day of July 1984 with Joe Gilbreth and having performed in full as required therein.* (Emphasis added)

Sincerely,

s/Ben D. Sudderth

BEN D. SUDDERTH
CHAIRMAN OF THE BOARD
THE EARLY BANK, EARLY, TEXAS

Gilbreth did not pay the quarterly interest on the balance as required by the contract. The joint venture extended the time required for payment, but Gilbreth failed to meet the extended deadline. On August 30, 1985, the joint venture presented a sight draft to the bank accompanied by a letter which stated that:

(1) The joint venture had complied with the terms of the contract and had performed in full as required by the contract.

(2) Gilbreth had failed to pay the interest due on the balance of the purchase price of the remaining lots covered by the contract.

(3) The joint venture had terminated the contract.

Gilbreth presented the bank a letter stating that the joint venture had neither strictly complied with the contract nor performed in full as required by the "letter of credit." Sudderth's motion for summary judgment alleged that the evidence failed to establish that the joint venture was in "strict compliance" with the terms of the "conditional letter of credit."

■ All parties have treated the instrument in controversy as a letter of credit; however, we hold that the instrument issued by the bank on July 25, 1984, is a guaranty contract and not a letter of credit.

■ Our Supreme Court in *Republic National Bank of Dallas v. Northwest Na-*

*tional Bank of Fort Worth,* 578 S.W.2d 109 (Tex.1978), clearly pointed out the difference between a true letter of credit and a guaranty contract. The Court stated:

> [U]nder Chapter 5 of our commercial statutes [Uniform Commercial Code–Letters of Credit, TEX.BUS. & COM.CODE ANN. ch. 5 (Vernon 1968 and Supp. 1988)] the test of a true letter of credit may be stated as follows: The engagement is a letter of credit if the issuer has a primary obligation that is dependent solely upon presentation of conforming documents and *not upon the factual performance or nonperformance by the parties to the underlying transaction.* (Emphasis added)

A standby letter of credit is one whereby the issuer agrees to pay the beneficiary upon presentation of documents stating that the account party has defaulted on a payment obligation. *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth,* supra. As pointed out in *Apex Oil Company v. Archem Company,* 770 F.2d 1353 (5th Cir.1985), a standby letter of credit will often be a documentary letter of credit since the issuer will require some kind of accompanying documentation to indicate or establish that there has been a default. See also Arnold and Bransilver, *The Standby Letter of Credit–The Controversy Continues,* 10 U.C.C.L.J. 272 (1978); Verkuil, *Bank Solvency and Guaranty Letters of Credit,* 25 Stan.L.Rev. 716 (1973). In both *Republic National Bank of Dallas* and *Apex Oil Company,* the beneficiaries were only required to provide the issuer with documentation stating that default had occurred.

■ In their contract, Gilbreth as the buyer agreed to furnish the joint venture with a letter of credit entitling the joint venture to draw against the full amount and to retain such sum as liquidated damages "solely upon written request of Seller to the issuer of said letter of credit stating Buyer has defaulted under the terms hereof." The contract clearly required Gilbreth to furnish the joint venture a true letter of credit.

■ The instrument signed by Sudderth and issued by the bank did not state merely that the seller was required to present a document stating that the buyer had defaulted. The instrument that all the parties mistakenly refer to as a "letter of credit" imposed the following acceptable conditions for payment under a letter of credit:

1. The joint venture must present a clean sight draft not exceeding $231,-000 on or before January 25, 1986;
2. The draft must be marked "Drawn Under Early Bank, Letter of Credit No. 104 Dated July 25, 1984;"
3. The original letter of credit must accompany the draft.

The final condition, however, required the joint venture to be "in compliance with terms of Contract dated 25th day of July 1984 with Joe Gilbreth" and to have "performed in full as required therein." This requirement prevents the instrument from being a true letter of credit. The bank's obligation did not depend solely upon the presentation of conforming documents for payment; rather, the obligation depended upon the factual performance by the joint venture on the underlying contract with Gilbreth.

The instrument under consideration is very similar to the instrument discussed in *Wichita Eagle & Beacon Publishing Company, Inc. v. Pacific National Bank of San Francisco,* 493 F.2d 1285 (9th Cir. 1974). There, the instrument was labeled a "letter of credit." The Court, however, held that the instrument was a guaranty contract rather than a letter of credit because the obligation of the issuer depended upon the existence or nonexistence of facts as to whether a party had failed to perform certain provisions of a lease. The Court stated:

> The instrument involved here strays too far from the basic purpose of letters of credit, namely, providing a means of assuring payment cheaply by eliminating the need for the issuer to police the underlying contract. Harfield, The Increasing Use of Domestic Letters of Credit, 4 U.C.C.L.J. 251, 257 (1972); Ward & Har-

field, Bank Credits and Acceptance 46, 136–38 (1958). The instrument neither evidences an intent that payment be made merely on presentation on a draft nor specifies the documents required for termination or payment. To the contrary, it requires the actual existence in fact of most of the conditions specified: for termination or reduction, that the city have refused a building permit; for payment, that the lessee have failed to perform the terms of the lease and have failed to correct that default, in addition to an affidavit of notice.

The Court added:

> True, in the text of the instrument itself the instrument is referred to as a "letter of credit," and we should, as the district court notes, "give effect wherever possible to the intent of the contracting parties." [*Wichita Eagle and Beacon Publishing Company, Inc. v. Pacific National Bank of San Francisco*] 343 F.Supp. [332] at 338 [D.C.Cal.1971]. But the relevant intent is manifested by the terms of the agreement, not by its label. *Bekins v. Lindsay–Strathmore Irrigation District*, 114 F.2d 680, 684 (9th Cir.1940).

The instrument issued by the bank, as the instrument in *Wichita Eagle & Beacon Publishing Company, Inc.*, did not merely provide that the beneficiary present to the bank a document stating that the contract had been breached but also clearly required the bank to make a factual determination as to whether the joint venture was in "compliance with the terms of Contract" and had performed in "full as required therein."

 Sudderth urged in his motion for summary judgment that the joint venture had not strictly complied with the terms of the "letter of credit." He relies upon the "strict compliance" rule discussed in *Westwind Exploration, Inc. v. Homestate Savings Association*, 696 S.W.2d 378 (Tex. 1985). That rule is applicable in a true letter of credit case where the issuer deals only with documents and is completely isolated from the underlying transaction. Here, we are dealing with a guaranty contract, a theory not urged in the motion for summary judgment.[3] A motion for summary judgment must stand or fall on the grounds specifically and expressly set forth therein. See *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *Texas State Investors, Inc. v. Kent Electric Co., Inc.*, 620 S.W.2d 841 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

Furthermore, the record reflects a fact question as to whether the joint venture complied with its contract with Joe Gilbreth. By affidavit, the joint venture urged that it had constructed streets and provided water and waste water facilities to the lots which were the subject of the contract. By deposition, Gilbreth contended the joint venture breached its contract by failing to bring functional water and waste water facilities to the property.

The judgment of the trial court is reversed, and the cause is remanded.

---

**3.** Issues regarding the validity and enforceability of the guaranty contract will not be addressed.