**TELEPORT COMMUNICATIONS GROUP, INCORPORATED,** Plaintiff–Appellee,

v.

**BARCLAY FINANCIAL GROUP, LIMITED, Defendant–Appellant.**

No. 98–2572.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1999.

Decided May 5, 1999.

Jeffrey Y. Lewis, Swift, Currie, McGhee & Hiers, Atlanta, GA, Michael A. Ficaro, John P. Ratnaswamy (argued), Hopkins & Sutter, Chicago, IL, for Plaintiff–Appellee.

Leon E. Lindenbaum, Lindenbaum, Coffman, Kurlander, Brisky & Hayes, Chicago, IL, John A. Christy (argued), Schreeder, Wheeler & Flint, Atlanta, GA, for Defendant–Appellant.

Before KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Barclay Financial Group, Inc. issued a $1 million "Letter of Credit" to Teleport Communications Group, Inc. at the request

of MetroLink Communications, Inc. When Teleport presented two sight drafts totaling $1 million, however, Barclay refused to pay, claiming that Teleport had defrauded MetroLink and citing a clause in the instrument that it believed conditioned payment on a lack of fraud in the Teleport–MetroLink transaction. Teleport sued. Judge Charles P. Kocoras granted summary judgment in favor of Teleport, construing the instrument as an unconditional letter of credit. Barclay appeals.

When Teleport Communications Group agreed to provide telecommunications services to MetroLink Communications, it required MetroLink to obtain a letter of credit to guarantee payment. MetroLink went to Barclay Financial Group, negotiated the terms of an instrument titled "Letter of Credit," and presented it to Teleport. Teleport accepted the instrument without objection to its form or content.

The instrument is titled "Letter of Credit No.: ML109601" and states "We hereby issue in your favor this irrevocable Letter of Credit for U.S. $1,000,000 (One Million Dollars) which is available against your draft at sight drawn on us accompanied by the following: [a written statement that MetroLink has failed to make payments due under the Teleport–MetroLink contract]."[1] The next paragraph begins: "References in this letter of credit to [the Teleport–MetroLink contract] are for identification purposes only and are not an integral part of this letter of credit." Finally, the instrument states that the "letter of credit may not be drawn upon in the case of fraud, misappropriation of funds, misrepresentation or criminal activity." According to MetroLink, it directed Barclay to include this last clause because it was "concerned about potential problems with Teleport's telecommunications network."

MetroLink and Barclay also negotiated and executed a "Letter of Credit Reimbursement Agreement." In essence, MetroLink agreed to immediately reimburse Barclay for any amount paid to Teleport on the "Letter of Credit." A few months later, MetroLink complained to Barclay that Teleport had acted fraudulently by making several misrepresentations about

---

1. The full text of "Letter of Credit No. ML109601" reads as follows:

We hereby issue in your favor this irrevocable Letter of Credit for U.S. $1,000,000 (One Million Dollars) which is available against your draft at sight drawn on us accompanied by the following:

A written statement purportedly signed by a representative of Teleport Communications Group, Inc. ("Teleport") stating that, "After October 1, 1996, MetroLink Communications, Inc., ("MetroLink"), formerly known as GlobalOne, Inc. ("GlobalOne"), has failed to pay amounts due and owing after October 1, 1996, under the terms of the National Master Service Agreement, between Teleport and GlobalOne, dated November 1995, or the Service Supplement No. 1 thereunder and the amount drawn will satisfy such obligation," and/or "After October 1, 1996, Teleport or one of its affiliates has incurred direct and documented engineering or translation expenses which must be reimbursed under the terms of the National Master Service Agreement, dated November 1995, and Service Supplement No. 1 thereunder, and the amount drawn will satisfy such obligation."

References in this letter of credit to National Master Service Agreement, dated November 1995, and Service Supplement No. 1 thereunder, are for identification purposes only and are not an integral part of this letter of credit. There may be more than one draw under this letter of credit; however, each draw hereunder reduces the availability hereunder by the amount of such draft. This letter of credit may not be drawn upon in the case of fraud, misappropriation of funds, misrepresentation or criminal activity.

All drafts must be marked "Drawn Under Barclay Financial Group, Ltd., Letter of Credit No. ML109601, dated October 9, 1996."

This Letter of Credit will expire at our office on March 9, 1997.

We hereby engage with you that all drafts drawn under and in direct compliance with the terms of this Letter of Credit will be duly honored upon presentation to us at our office at 5505 Interstate North Parkway, Atlanta, Georgia 30328.

its services. MetroLink instructed Barclay not to honor any sight drafts presented by Teleport. Shortly thereafter, Teleport presented two sight drafts to Barclay that conformed to all the documentary specifications in the "Letter of Credit." Per MetroLink's instructions, Barclay refused to honor the drafts.

Predictably, a flurry of litigation ensued. MetroLink sued Teleport for fraud in Cook County circuit court. MetroLink also sued Barclay, seeking a temporary restraining order, a preliminary injunction, and a declaratory judgment to make sure Barclay did not pay on the instrument. Barclay removed the action to the United States District Court for the Northern District of Illinois. Meanwhile, Teleport sued Barclay in federal court in Georgia. Finally, all the cases were consolidated in the Northern District of Illinois, and everyone moved for summary judgment. Judge Kocoras granted summary judgment to Teleport, finding that Barclay had wrongfully refused to honor the sight drafts. The judge also granted Barclay summary judgment against MetroLink on the reimbursement agreement. Presumably, MetroLink is unable or unwilling to make good on the reimbursement because Barclay has appealed Judge Kocoras's decision to enforce the "Letter of Credit."

We review the district court's grant of summary judgment de novo. See Thomas v. Ramos, 130 F.3d 754, 758 (7th Cir.1997). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c).

The only issue on appeal is whether the instrument issued by Barclay is actually a letter of credit. The parties agree that Georgia law governs the dispute and, under the Georgia Commercial Code, a letter of credit is a promise by a bank or other issuer, made at the request of a customer, that the issuer will honor drafts presented by the beneficiary. See Ga.

Code Ann. § 11–5–103. The purpose of a letter of credit is to provide "a means of assuring payment cheaply by eliminating the need for the issuer to police the underlying contract." Wichita Eagle & Beacon Publ'g Co. v. Pacific Nat'l Bank of San Francisco, 493 F.2d 1285, 1286 (9th Cir. 1974). For this reason the issuer's promise to pay on a letter of credit is conditioned only on the presentation of specified documents. If the proper documents are presented, the issuer must pay, regardless of the status of the underlying transaction between the customer and beneficiary. See Dibrell Bros. Int'l v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1579 (11th Cir. 1994).

The Georgia Commercial Code treats any credit instrument that "conspicuously states that it is a letter of credit or is conspicuously so entitled" as a letter of credit. Ga.Code Ann. § 11–5–102(1)(c). The Barclay instrument is conspicuously so entitled and refers to itself internally as a "letter of credit" no fewer than eight times. But Barclay argues that despite the title and internal references the instrument is really no more than a conditional payment guaranty. The advantage of this position for Barclay is obvious. If Barclay merely guaranteed MetroLink's payment, Barclay is only liable to the extent MetroLink is liable on the underlying contract. And Barclay would be entitled to raise any MetroLink defense to payment (in this case the alleged Teleport fraud).

To support its argument that the instrument is a mere payment guaranty, Barclay points out that under Georgia law, the issuer of a letter of credit must pay upon proper presentation of a sight draft "unless otherwise agreed." Ga.Code Ann. § 11–5–114(2). According to Barclay, the parties "otherwise agreed" when they included the clause "[t]his letter of credit may not be drawn upon in the case of fraud, misappropriation of funds, misrepresentation or criminal activity." Barclay argues that this "fraud language" expressly conditions payment on Teleport's non-

fraudulent performance of the underlying Teleport–MetroLink contract. Because MetroLink informed Barclay that Teleport had misrepresented its telecommunications services, Barclay was entirely justified in refusing to honor the Teleport sight drafts.

Barclay cites two cases from other jurisdictions where courts have followed this logic and treated instruments titled letters of credit as mere guaranty contracts. *See Wichita Eagle & Beacon Publ'g Co. v. Pacific Nat'l Bank of San Francisco*, 493 F.2d 1285, 1286 (9th Cir.1974); *Gunn–Olson–Stordahl Joint Venture v. Early Bank*, 748 S.W.2d 316 (Tex.App.–Eastland 1988). These courts reasoned that an instrument specifically conditioning payment on something other than meeting documentary formalities cannot operate as a letter of credit even if the instrument is titled "Letter of Credit." *See Wichita Eagle*, 493 F.2d at 1286 (payment expressly conditioned on beneficiary's compliance with terms of the underlying lease); *Early Bank*, 748 S.W.2d at 319 (instrument required issuer before paying to verify that beneficiary had factually performed on the underlying contract). Barclay argues that the fraud language in the instrument here similarly destroys its status as a letter of credit because it makes payment expressly conditional on Teleport not acting fraudulently in its dealings with MetroLink. By its terms, Barclay argues it must in effect police the underlying transaction.

The fraud language in Barclay's "Letter of Credit," however, does no such thing. The provisions at issue in the cases cited by Barclay expressly stated the issuer's duty to police the beneficiary's compliance with the underlying agreement. In the instant case, the fraud language does not even expressly refer to the underlying agreement. In fact, the paragraph containing the fraud language begins: "References in this letter of credit to [the underlying Teleport–MetroLink contract] are for identification purposes only and are not integral to this letter of credit." This statement makes no sense if the fraud language later in the paragraph is read to refer to the underlying Teleport–Metro-Link contract.

A more natural reading of the fraud language is that it refers to Teleport's dealings with Barclay. In other words, the provision allows Barclay to refuse to pay if there is fraud, misappropriation, misrepresentation, or criminal activity in the presentation of a sight draft. (The district court cites the example, and a rather good one we think, of a party other than Teleport wrongfully attempting to present a sight draft to Barclay.) This is the only logical reading of the instrument's third paragraph which expressly disavows any reference to the underlying Teleport–MetroLink deal. Thus, in this case, payment on the instrument is conditioned only on proper presentation of a sight draft, and the "Letter of Credit" is exactly what it purports to be—a letter of credit.

■ Barclay also argues that at the very least, the fraud language in the instrument is ambiguous, which would give us an excuse to examine parole evidence to determine its meaning. *See Vass v. Gainesville Bank & Trust*, 224 Ga.App. 259, 480 S.E.2d 294, 296 (1997) (letters of credit are contracts and are subject to the same general principles of interpretation); *Taylor Freezer Sales Co. v. Hydrick*, 138 Ga.App. 738, 227 S.E.2d 494 (1976) (parole evidence is admissible only if contract is ambiguous). But as we have discussed, there is nothing ambiguous about the fraud language when it is read in the proper context. And even if consideration of parole evidence is appropriate, the evidence Barclay provides is less than compelling. The president of Barclay testified in his deposition that MetroLink asked him to include the fraud language because it was "concerned about potential problems with Teleport's telecommunications network." Barclay included the fraud language, and Teleport never objected to it. This is hardly evidence that the parties mutually agreed to attach a condition to

the instrument that virtually destroys its value as a traditional letter of credit.

If anything, this evidence makes it seem that MetroLink and Barclay were trying to put one over on Teleport by telling Teleport it was getting a letter of credit, titling the instrument "Letter of Credit," structuring the instrument as a letter of credit, but then inserting ambiguous fraud language to gum up the works if Metro-Link decided it wanted to get out of paying on the contract. More importantly, if MetroLink was really concerned about Teleport's network (i.e., its ability to perform on the contract) it should have inserted language conditioning payment on Teleport's satisfactory performance of the contract, not on the absence of fraud. Of course, Teleport would have been unlikely to accept such conditions because the instrument would have then been useless. There is no credible evidence that the parties "agreed otherwise" under Georgia law to condition payment on something other than Teleport's proper presentation of documents. We therefore affirm the district court's grant of summary judgment to Teleport.